The People of the State of New York, Respondent, *v.* Gordon Jenman, Appellant.

Submitted January 8, 1947; decided April 17, 1947.

*Ray F. Fowler* for appellant. I. The evidence that a second party entered his car after the offense and was apparently searching for the pinch bar, and was arrested thereafter, raised the inference that defendant had committed the act with an accomplice. II. Ultimate inference of defendant's guilt depended almost entirely upon circumstantial evidence. This evidence was insufficient to justify the findings of guilt beyond a reasonable doubt. (*People* v. *D'Anna*, 243 App. Div. 259.)

*Daniel J. O'Mara, District Attorney* (*Harry L. Rosenthal* of counsel), for respondent. I. The facts established gave rise to no other inference except that of guilt. (*People* v. *Willett*, 213 N. Y. 368; *People* v. *Birnbaum*, 208 App. Div. 476; *People ex rel. Pressler* v. *Warden*, 109 Misc. 155; *People* v. *Wilson*, 7 App. Div. 326, 151 N. Y. 403; *Foster* v. *People*, 63 N. Y. 619; *People* v. *Larned*, 7 N. Y. 445; *Knickerbocker* v. *The People*, 43 N. Y. 177.) II. The evidence as to the young woman's entering defendant's car and her arrest did not raise the inference that she was an accomplice. III. The evidence upon which defendant's guilt depended was sufficient to justify the findings of guilt beyond a reasonable doubt. (*People* v. *Razezicz*, 206 N. Y. 249.)

LOUGHRAN, Ch. J. After trial in the County Court of Monroe County, the defendant was convicted of burglary in the third degree and of felonious possession of a burglar's instrument. (See Penal Law, §§ 404, 408.) The Appellate Division affirmed. One of the Justices dissented and the case is now here by his permission.

On the night of March 26, 1944, several pieces of jewelry were stolen from a dwelling house in the town of Brighton, Monroe County, during an absence of the occupants. Entry had been

effected through an upstairs window. Soon after discovery of the crime the defendant drove past the scene in an automobile owned by him; shortly thereafter the same vehicle (which was then unoccupied) stood in front of a drugstore three miles away and was there searched by police officers who seized a pinch bar that was lying on the floor near the front seat; fifteen minutes later, a woman with a gown or apron in her hand got into the car and sat upon the passenger's side of the front seat where she was arrested when the waiting police officers saw her bend downward toward the floor of the vehicle. Two hours afterward, the defendant came out of the drugstore and, at the request of the officers, went with them to their headquarters. Deposits of paint that were found upon the pinch bar corresponded in color and texture with fragments of paint that had been ground into the sill of the window through which the unlawful entry had been accomplished, and a portion of the pinch bar fitted approximately into indentations that were observable on the window sill at the time in question. In the opinion of an expert witness who testified to the facts last stated, the pinch bar and the window sill had come into contact at some time. Such was the case for the People.

There was no evidence as to any acquaintance or communication at any time between the defendant and the woman who was arrested inside his automobile after the police officers had removed the pinch bar therefrom. In his address to the jury, the District Attorney referred to the taking of the pinch bar by the officers and said: "A short time later, some girl appears on the scene, and you have heard her actions described in reference to the car in the vicinity where this pinch bar had been located. Who sent her there? * * * What was the occasion of her coming there? Those are circumstances you can construct in your own minds from the facts that have taken place." When objection to that argumentation was made by the defendant's counsel, the Trial Judge said: " I think it is a proper summary. You may have an exception. The jury has the right to consider that." Counsel for the defendant pressed his point in these words: " Yes, but not that she was sent there by the defendant." Nevertheless the Trial Judge said: " No, they have a right to construct the meaning of it." The same issue arose after the Trial Judge had delivered his charge to the

jury. At that stage, counsel for the defendant requested the Judge to declare that " there is no evidence in this case by which the jury can assume there was any confederate." To that request the Judge replied: " There is no direct evidence of any confederate, but in your words I decline so to charge."

These rulings, we think amounted to material error. Thereby the jury were permitted to draw the inference that the woman who entered the defendant's automobile had been summoned by him to do so, though there was no evidence to that effect nor even an intimation of any knowledge by him of the fact of her existence. The jury ought not to have thus been licensed to reach a verdict of criminal guilt upon a ground that had no evidentiary basis (*People* v. *Van Aken,* 217 N. Y. 532); and they must be taken to have followed the above last-word instruction of the Trial Judge, since he had correctly advised them of their sworn duty to accept the law as laid down by him (*Stokes* v. *People of the State of N. Y.,* 53 N. Y. 164, 184; see Code Crim. Pro., § 419).

The judgments should be reversed and a new trial ordered.

FULD, J. (dissenting). The proof, albeit circumstantial — consisting of evidence of defendant's possession of the tool used in forcing entry into the burglarized premises (*People* v. *Wilson,* 7 App. Div. 326, 333, affd. 151 N. Y. 403; *People* v. *Larned,* 7 N. Y. 445, 447, 452; *People* v. *Weiss,* 367 Ill. 580, 587; *Wilborne* v. *Commonwealth of Virginia,* 182 Va. 63, 66) and of evidence of his presence falsely denied, near the scene of the crime (*People* v. *Deitsch,* 237 N. Y. 300, 303; *People* v. *Gorski,* 236 N. Y. 673; see, also, *People* v. *Kress,* 284 N. Y. 452, 466) — is exceedingly clear and convincing and establishes guilt beyond any doubt.

It may not be overlooked, as remarked in a capital case several years ago, that " Errors which loom large to a judge, learned in the law and trained to administer justice in strict accordance with the law, may be scarcely visible to the lay juror." (*People* v. *Buchalter,* 289 N. Y. 181, 224-225, per LEH-MAN, Ch. J.) So, here, even were we to assume the existence of error — to my mind highly debatable — we are commanded to disregard errors and defects " which do not affect the substantial rights of the parties " (Code Crim. Pro., § 542). In the light of the record before us, it seems clear that this

is not a case where the asserted error could have " turned the scale in the minds of the jury to the disadvantage of accused." (See *People* v. *Slover,* 232 N. Y. 264, 267.) Consequently, the ends of justice require an affirmance under the clear mandate of the statute (Code Crim. Pro., § 542).

The judgment should be affirmed.

LEWIS, CONWAY, DESMOND, THACHER and DYE, JJ., concur with LOUGHRAN, Ch. J.; FULD, J., dissents in opinion.

Judgments reversed, etc.