■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THEODORE WILLIAM WALKER, Appellant.—Appeal by the defendant from a judgment of the County Court, Suffolk County, rendered April 14, 1976, convicting him of two counts of assault in the first degree, assault in the third degree and reckless endangerment in the first degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. This case arises out of an interfamilial conflict which had its origins in a fight between the defendant's lover and his wife. In order to redress an insult to his wife, defendant confronted his lover, Ossidenna Frazier Seabury, on April 26, 1975, and, after arguing with her, he struck her. When Ossidenna informed her brothers of the defendant's conduct, the stage was set for the altercation which forms the basis of this prosecution. On the evening of the same day that the defendant struck his lover, he went to the My Way Bar in Amityville, New York, where he met Ossidenna's brothers, Jackie and Ulysses Frazier. An argument ensued, which came to a head when Jackie Frazier pulled out a knife and threatened the defendant with it. The two were held apart; the fight was broken up and all of the participants were asked to leave the bar. This much is agreed upon. However, the witnesses disagreed sharply as to who started the second fight, which occurred outside the bar almost immediately thereafter. The defense witnesses testified that the defendant was standing between two cars in the parking lot; that the Frazier brothers and their friends began to circle the defendant; that Jackie Frazier pulled out another knife; and that defendant then shot his attackers in self-defense. The People's witnesses told a different story. They testified

that the defendant went over to a car in the parking lot; he saw the Frazier brothers and their friends standing on the curb in front of the bar and he then started towards them and commenced firing a revolver at them, injuring several of the people. At the trial the defense of justification was raised and apparently rejected, but owing to the parity of credibility between the People's and the defendant's witnesses, the evidence of defendant's guilt cannot be considered overwhelming. Defendant contends, *inter alia,* that he was denied a fair trial due to the inflammatory and unfair remarks of the prosecutor during his summation. The relevant portions of the prosecutor's (Mr. Lundstedt) summation read as follows: "Now, we've learned that Teddy Walker has a club within Amityville. We learned that he lives within Amityville and we've heard witnesses come in and speak concerning Teddy Walker. Patricia Parker calls him Mr. Walker. Teddy Walker is not the usual inhabitant of this area in North Amityville. If I were to say the word 'nigger' I think in most of our minds as white persons, we don't hear that word in the white community, at least in recent years to any large extent, but in the black community nigger is a word used often and its a definitive word. It's a word used by Negroes to describe somebody at the bottom of a social stratum. MR. CUTI: I object to this characterization of the defendant in this fashion. MR. LUNDSTEDT: I am in no way characterizing this defendant. Quite the contrary. THE COURT: Same admonition I gave to Mr. Cuti, I give you. This is comment on the evidence and I will allow it. I will be glad to clear all matters up when it's time for me to charge the jury. Objection overruled. MR. LUNDSTEDT: Quite to the contrary. A Negro that calls a person a nigger in a Negro community, means someone at a low scale. Teddy Walker is not a nigger in the black community. He's the opposite. Teddy has the club. He wears the clothes and he's got the women. If you think the Orientals have—I can't think of the word, but I am indicating that if you think the Orientals have any option on the word face, they alone don't. In the Negro community what we know as face concerning Orientals, is a very, very important thing. Teddy Walker has to maintain face throughout his community. He's got to be up at the corner every day— MR. CUTI: If Your Honor please, I resent the statement by the District Attorney. There has been no evidence of any status of Teddy Walker. THE COURT: I would agree with you. The character of Teddy Walker has not been put in question. I do not think your comment in this regard is applicable. MR. LUNDSTEDT: * * * Teddy is trying to save face. He broke the code of the Negro community, two women in one town. That's a no no. MR. CUTI: I object to his continued remarks concerning Teddy Walker and the status of the community and the code. I have no evidence that Teddy broke any codes. MR. LUNDSTEDT: I submit it's based on the evidence, and fair comment. THE COURT: Both of you gentlemen, approach the Bench, please. [Whereupon, a conference was held at the Bench.] MR. LUNDSTEDT: Teddy Walker had two women in the same town. Teddy Walker went to the bar that night, the My Way Bar, and he walks into the My Way Bar knowing the Fraziers are there with an affront *[sic].* Teddy Walker is above the code in North Amityville. MR. CUTI: Your Honor, I am going to again object to any reference about the code or the defendant's status. So as not to further interrupt the District Attorney's interpretation, I ask the Court place my standing objection that there should be no reference to any personal matters involving Teddy Walker and his 'code' or status in the community. THE COURT: I will be glad to charge the jury when the time comes for me to charge that they should disregard any of the comments made by counsel not based upon evidence. They have a right to comment favorably or disfavor-

ably upon the evidence, but their statement is not to be deemed evidence. [Summation resumes.] MR. LUNDSTEDT: In breaking the code of the community, people were chagrined. We heard the Fraziers questioned by me, to Jackie and Ulysses, did you attach some blame on Ossidenna for what happened the night before and I believe they both indicated 'yes' * * * The Fraziers were acting reasonably in this case. You have a sister, man wrongs her. You blame your sister, but at least you want some explanation. You want to talk, *but the big man comes in, a big man who's above the code of the community. These rules don't apply to me. They apply to the niggers. Teddy is above the community, but after the scuffle, it's over.* * * * It took a hell of a lot of guts for these people to come in here and testify against the big man because they've got to go back down to the corner. They've got to live in the community and they've got to face the persons who will say to them, who went out there to the court and testified against the brother and they know this, but they came and they placed their confidence in the justice system out here. They placed their confidence in me as a prosecutor and you as the jurors and the Court, and now the community is sitting back and waiting * * * In jury selection, when I had spoken to you, I indicated whether or not you all agreed you could give Teddy Walker, as a black man, a fair trial and I indicated to you and you agreed whether you could give the victims in this case who are black men, a fair trial. Gentlemen, It's not a question of black or white. Forgive me if I bring up the obvious, but sometimes we lose perspective when we think of Negroes. I don't think I am telling any tales out of school if I say that we've all heard persons say 'Well, they are a bunch of animals and what do you expect from them.' Gentlemen, this is not the case with the Negro population as a whole. They have the same rights as white persons. They have the right to be free from criminal conduct against them. They have the right to have their community cleansed of this conduct. They have the right to justice. *When you deliberate, deliberate black victims, black defendant. Deliberate as a member of the community, your community, gentlemen. This is Suffolk County where you live and I live."* (Emphasis supplied.) There were further inflammatory remarks throughout the summation, including the intimation that the defendant had procured perjured testimony in his own behalf. The summation then culminated with the statement: *"The community sits back, gentlemen, and waits for the justice system in Riverhead to make a determination. If Teddy Walker isn't guilty, Lee Harvey Oswald didn't shoot President Kennedy, Sirhan Sirhan didn't shoot the second Kennedy and Hoffman [sic] didn't kidnap the Lindberg baby."* (Emphasis supplied.) The Court of Appeals has recently articulated certain guidelines on the latitude to be afforded a District Attorney in summing up to a jury in a criminal case. In *People v Ashwal* (39 NY2d 105, 109-110) the court stated: "It is fundamental that the jury must decide the issues on the evidence, and therefore fundamental that counsel, in summing up, must stay within 'the four corners of the evidence' * * * and avoid irrelevant comments which have no bearing on any legitimate issue in the case * * * Thus the District Attorney may not refer to matters not in evidence * * * or call upon the jury to draw conclusions which are not fairly inferrable from the evidence * * * *Above all he should not seek to lead the jury away from the issues by drawing irrelevant and inflammatory conclusions which have a decided tendency to prejudice the jury against the defendant"* (emphasis supplied). In the case at bar it is clear that the Assistant District Attorney needlessly and deliberately highlighted certain collateral factors and endeavored to portray the defendant as an "undesirable" in that he maintained his power

within the Black community by intimidation and force. In short, the summation was not designed to encourage a careful consideration of the facts, but rather to engender a collective rage within the jury which would result in the defendant's conviction. Indeed the People concede that several of these remarks were improper, but claim that they were not prejudicial and constituted harmless error in the context of this case. In our view, in light of the close question of fact on the issue of justification, these remarks cannot be treated as harmless error. On the contrary, the resultant prejudice requires a new trial. Latham, J. P., Suozzi, Gulotta, Shapiro and Cohalan, JJ., concur.