■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM BROWN, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered April 20, 1978, convicting him of criminal possession of a controlled substance in the first degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. The theory of the prosecution at trial was that the defendant possessed a bag containing heroin which he had thrown into Warwick Street in the course of a night-time chase of his vehicle by the police. The chase occurred when the defendant "sped away" after being stopped by the police for passing a red light. Officer Smith testified that he was operating a radio car with Officer Kozak as the recorder at about 9:45 P.M. on August 26, 1976; that the defendant's vehicle passed a red light; that he motioned the defendant to pull over to the curb; that when he, Smith, alighted from his car to talk to the defendant, the latter "sped away"; that a high speed chase ensued, through the Borough of Brooklyn, for about 30 blocks; and that the defendant was finally apprehended after having stopped at an intersection. Defendant was found lying down on the seat of his car. During the chase both cars were going at speeds of more than 50 miles per hour and Smith lost sight of the defendant's car more than once. He never saw anything thrown out of the defendant's car. He recalled that Warwick Street was among the streets traveled in the course of the chase, and that defendant had turned left onto Warwick Street going south with the police car half a block behind him. At that time, Smith lost sight of the defendant's vehicle. After apprehending the defendant for reckless driving and while on the way to the precinct, Smith left the car to attend to an emergency. Officer Kozak, on direct examination, testified that while the defendant's car was speeding down Warwick, he observed defendant throw a white bag out of the car under a street light. The bag landed in the street right in front of the curb. After dropping Smith off, he took the defendant directly to the precinct and approximately 10 or 15 minutes later, he returned to Warwick Street. In the area of 169 Warwick Street, he recovered a white McDonald's bag from a Mr. Maldonado. The bag contained decks of white powder which, upon analysis, proved to be heroin weighing two and one-quarter ounces. On cross-examination Kozak testified that he lost sight of the defendant's car when it turned the corner onto Warwick Street, but that he saw the white bag come out of the driver's side of the car in the middle of Warwick Street, about 200 to 250 feet from the corner of Arlington and Warwick. At the time the police car was about 200 feet behind the defendant's car. He admitted that he could not say that the bag given him by Maldonado was the bag he had seen thrown from the car. He testified that he was given the bag by Maldonado in front of 169 Warwick Street which he said was in the middle of the block. He admitted that when he testified before the Grand Jury he stated that the bag was thrown in front of 169 Warwick Street, and then conceded that at the time of the incident he had not noted the address. Further cross-examination elicited an acknowledgement by Kozak that the precinct received a call about the bag having been found and giving the location. However, he denied that this information was given to him before he returned to the scene. He claimed to have returned to the scene alone. It

also appeared that defendant was searched after he was arrested and that bookmaking slips were found on his person. Maldonado, a resident of Warwick Street, testified on direct examination that he was working on his car in front of his house at 176 Warwick Street when he heard a speeding car coming around the corner followed in a few seconds by a police car. Immediately after the two cars sped by, Maldonado had a conversation with a number of children playing near 169 Warwick. As a result of the conversation, he walked about 20 yards from his car to the vicinity of 169 Warwick. There he found a McDonald's paper bag containing a number of little envelopes of white powder. Maldonado did not recall seeing any other bags lying in the area when he picked up the McDonald's bag. He also found a gun near the bag.* According to Maldonado, 169 Warwick is the second house from the corner of Arlington and Warwick, there being a garage between the corner house and number 169. Contrary to the testimony of Kozak, who indicated that 169 Warwick is 200 to 250 feet from the corner of Arlington and Warwick, Maldonado stated that 169 is only about 75 feet from the corner. After picking up the bag, Maldonado told his son to call the police. He waited until they arrived at which time he turned the bag over to Officer Kozak. Maldonado stated that Kozak came 10 to 15 minutes after he had told his son to call the police and that Kozak (contrary to Kozak's version) was accompanied by another police officer. The last prosecution witness was Mary Martino, an elderly woman. She testified that she was sitting on the porch of her house at 167 Warwick Street, at about 10:00 P.M., when she saw a car go speeding by, followed by a police car; she was talking with her sisters at the time. She saw a bag thrown out of the first car onto the sidewalk. She did not recall seeing any other bags in the area. She did not see anyone pick up the bag, but she saw one of her neighbors whom she never identified by name or description, hand a bag to the police officers. Miss Martino testified that the bag had fallen in front of the house to the right of her house. Although she did not know the number of this house, she indicated that it was the second house from the corner of Arlington and Warwick. She stated, however, that 169 Warwick is the house on the left of her house. Defendant testified in his own behalf. He denied ever throwing anything from his car and stated that he sped away after the police signaled him to stop because they came toward him with their guns drawn. Defendant also testified that while at the precinct with Kozak, Kozak received a telephone call and told another officer that he had to go pick up a package. Defendant stated that Kozak subsequently returned and asked him if the package was his, which he denied. On cross-examination, and over objection, the prosecutor was permitted to ask defendant if at the time of his arrest he had in his possession $511, consisting of $280 in twenty dollar bills, $70 in ten dollar bills, $100 in five dollar bills, $4 in two dollar bills and $57 in one dollar bills. Defendant responded that he did not remember, but finally, when pressed, said, "if I could remember the exact money, all of it was five, it could have been $200." This answer immediately led to the following exchange: "Q. In other words, you're telling us you remember you had money on you, but it would have been anywhere from five to $500.00, you don't know, is that what you're telling us? A. Yes." After this, the prosecutor attempted to develop further, again over objection, what defendant was doing with that much money at 10 o'clock at night. Defendant's answer was that he might have seen something he wanted to buy, but that he could not remember. Further cross, over objection, devel-

---

\* Apparently a weapon charge against defendant was dismissed.

oped that defendant had previously been stopped by the police for running a red light and had been hit on the head with a nightstick. He was taken to the precinct and reported the hitting to the lieutenant who responded that "his boys never did anything like that." He did not make a complaint to the Civilian Complaint Review Board or to an attorney. Defendant testified that the experience had led him to panic when he was stopped by Kozak and Smith. At the outset, we note that we find the testimony of Officer Kozak not credible. Officer Smith, the driver of the police car, never saw anything thrown from defendant's car, although, according to Kozak, it was thrown from the driver's side. In addition, Kozak testified that the bag was thrown when the car was 200 to 250 feet from the corner, but it is clear from the testimony of Maldonado that the bag landed in a spot that was only 75 feet from the corner. Moreover, if Kozak had actually seen the bag thrown from defendant's car, it defies belief that he would not have brought defendant back to Warwick Street in an effort to retrieve it. Instead, according to Kozak, he first took defendant to the precinct and then returned alone to look for the bag. He denied that he returned to this scene because of a telephone call to the police station. His testimony that he returned alone was contradicted by the testimony of Maldonado who said that there were two police officers present, and by the testimony of Miss Martino who acknowledged the presence of more than one police officer. Disregarding the testimony of Officer Kozak, we nevertheless find that the evidence presented at trial was sufficient to prove defendant's guilt beyond a reasonable doubt. Miss Martino saw a bag thrown from defendant's car. Although she could not say that the white bag which the unidentified neighbor gave the police was the same bag which had been thrown from the car, she indicated that she had not seen any other white bags in the area. Maldonado similarly testified that he did not recall seeing any other bags in the area when he picked up the white bag. Moreover, although there appears to be conflicting testimony as to which house on Warwick Street is numbered 169, the physical description given by Miss Martino as to where the bag landed and by Maldonado as to where he recovered the bag are identical. Under all of the circumstances, we are convinced that there was sufficient identification of the bag. We are constrained, however, to order a new trial by reason of prejudicial prosecutorial conduct which deprived defendant of fair trial. First, the persistent effort of the prosecutor to have the jury infer that defendant was a dealer in heroin because of the amount of cash he had with him was clearly improper. In *People v Jones* (62 AD2d 356), the defendant was charged with a single sale of narcotics. There, as here, the trial was poisoned by proof that defendant had cash ($831) on his person when he was arrested. In holding that the proof thus elicited was manifestly prejudicial, the court noted that the only purpose for its introduction was to permit an inference by the jury that the possession of such an amount of currency was probative of the sale of illicit drugs as a business. Here, where the charge is drug possession and not drug sale, the error was even more egregious. Defendant was also prejudiced when the prosecutor brought out the fact that defendant had previously been arrested for a traffic infraction and in the further course of his questioning also elicited the fact that defendant claimed to have been hit on the head with a nightstick by the arresting officer. Based on that line of questioning, the prosecutor in his summation improperly suggested that defendant was a liar because he did not file a complaint with the Civilian Complaint Review Board. Had the evidence of guilt been overwhelming, we might have affirmed the judgment of convic-

tion on the ground that defendant had not been substantially prejudiced (see *People v Hamlin,* 58 AD2d 631). However, since there were several instances of conflicting testimony, the judgment should be reversed and a new trial ordered. Lazer, J. P., Rabin and Margett, JJ., concur.

Shapiro, J., concurs in part and dissents in part, with the following memorandum: I agree with the majority that the judgment of conviction should be reversed, but I would go further and dismiss the indictment.

### THE ISSUES

1. Was defendant's guilt proven beyond a reasonable doubt? My answer is "no". 2. Did the defendant receive a fair trial? Again my answer is "no".

### THE PEOPLE'S CASE

The theory of the prosecution was that the defendant possessed a bag containing heroin which he had thrown onto Warwick Street in the course of a night-time chase of his vehicle by the police. The chase occurred when the defendant's vehicle "sped away" after being stopped by the police for passing a red light. While in the main the majority correctly portrays the facts in the record, I deem it necessary, to justify my position that the indictment should be dismissed, to set forth at length, perhaps repetitiously, the facts as I view them. Officer Smith testified that he was operating a radio car at about 9:45 P.M. on August 26, 1976; that Officer Kozak was the recorder; that the defendant's vehicle, a gold Cadillac, bearing South Caroline plates, passed a red light at the intersection of Atlantic Avenue and Elton Street; that he motioned the defendant to pull over to the curb; that when he, Smith, exited his car to talk to the defendant, the latter sped away; that a high speed chase ensued for about 30 blocks; that the defendant was apprehended when he stopped at the intersection of Broadway and Furman Street, at which time he was found lying down on the seat of his car. During the chase both cars were going at speeds of more than 50 miles per hour and Smith lost sight of the defendant's car more than once. *He never saw anything thrown out of the defendant's car.* Smith recalled that Warwick Street was among the streets negotiated in the course of the chase. He testified that the defendant turned left onto Warwick going south. At that time he was half a block behind him and lost sight of the defendant's vehicle. After apprehending the defendant for reckless driving and while on the way to the precinct, Smith left the car to attend to an emergency. Officer Kozak, on direct examination, testified that while the defendant's car was speeding down Warwick, he observed defendant throw a white bag out of the car under a street light. The bag landed in the street right in front of the curb. He testified that he dropped Smith off "to handle another job in the street". Kozak took defendant to the precinct and, approximately 10 or 15 minutes later, returned to Warwick Street, where in the area of 169 Warwick Street, he recovered a white McDonald's bag from a Mr. Maldonado. The bag contained decks of white powder which the chemist, Mr. Shah, testified was heroin weighing two and one-quarter ounces. On cross-examination Kozak testified that he lost sight of the defendant's car when it turned the corner onto Warwick Street, but that he saw the white bag come out of the driver's side of the car in the middle of Warwick Street about 200 to 250 feet from the corner of Arlington and Warwick and at a time when his car was about 200 feet behind the defendant's car. *He admitted that he could not say that the bag given him by Maldonado was the bag he had seen thrown from the car.* He testified that he was given the bag by Maldonado in front of 169 Warwick Street which he said was in the middle of the block. Kozak differed with Smith on the State in which the defendant's car was registered. While Smith had noted that the car had South Carolina license

plates, Kozak, who had been only 10 feet away from the defendant's car when it was stopped for passing a red light, made note that it bore North Carolina plates. At the trial he could not recall whether the registration was North or South Carolina. At the preliminary hearing, the minutes of which were stipulated to be correct, *Kozak gave the route of the chase and completely omitted any mention of Warwick Street.* Kozak admitted that in testifying before the Grand Jury he had stated that the bag was thrown approximately in front of 169 Warwick Street, but then conceded that at the time of the incident he had not noted the address. Kozak further testified on cross-examination that the precinct had received a telephone call about a bag having been found and giving the location. However, he denied that this information was given to him before he returned to the scene. He claimed to have returned to the scene alone. Cross-examination also elicited the fact that defendant was searched after he was arrested and that bookmaking slips were found on his person. Mr. Maldonado, a resident of Warwick Street, testified on direct examination that he was working on his car in front of his house at 176 Warwick Street when he heard a speeding car coming around the corner, followed in a few seconds by a police car. He walked about 20 yards from his car to the vicinity of 169 Warwick Street where a group of kids was playing on the sidewalk. There he found a McDonald's paper bag containing a number of little envelopes of white powder. He also found a gun near the bag (a charge involving the gun was apparently dismissed). He told his son to call the police and waited until they arrived, at which time he turned the bag over to Officer Kozak. Maldonado did not recall seeing any other bags lying in the area when he picked up the McDonald's bag. Maldonado's house was about 80 to 90 feet from the corner of Arlington and Warwick and the witness walked toward Arlington for the bag. He found the bag in the vicinity of 169 Warwick Street which is the second house from the corner of Arlington and Warwick; a garage is in between the corner house and number 169. Contrary to the testimony of Kozak who stated that 169 Warwick Street was in the middle of the block, Maldonado stated that 169 is only about 75 feet from the corner of Warwick and Arlington. Maldonado also said that Kozak came about 10 to 15 minutes after he had told his son to call the police and that Kozak (contrary to the officer's testimony) was accompanied by another police officer. Mary Martino testified that she was sitting on the porch of her house at 167 Warwick Street when, at about 10:00 P.M., she saw a car go by fast followed by a police car; she was talking with her sister at the time and claimed she saw a bag thrown out of the first car onto the sidewalk. She did not see anyone pick up the bag, but she saw one of her neighbors whom she never identified by name or description give a bag to two police officers.

### THE DEFENSE

Without going into the testimony of the defendant *in extenso,* since reviewing the record we must accord the People the most favorable view of the evidence (see *People v Benzinger,* 36 NY2d 29, 32; *People v Cleague,* 22 NY2d 363; *People v Mitchell,* 64 AD2d 119), although I agree with the majority that the testimony of Officer Kozak is "not credible", the principal question here is whether the People proved the defendant's guilt beyond a reasonable doubt. I merely note that defendant denied having thrown anything from his car, that he claimed he sped away after the police signaled him to stop because they had come toward him with their guns drawn, and that he testified that at the precinct, Kozak received a telephone call and told another officer that he had to go pick up a package. When

Kozak returned he asked defendant whether the package was his. Defendant denied that it belonged to him. On cross-examination, and over objection, the prosecutor was permitted to ask defendant if at the time of his arrest he had in his possession $511, consisting of $280 in twenty dollar bills, $70 in ten dollar bills, $100 in five dollar bills, two $2 bills and 57 one dollar bills. The defendant responded that he did not remember, but finally when pressed said that if he could "remember the exact money, all of it was five, it could have been $200." This answer led to the following question: "Q. In other words, you're telling us you remember you had money on you, but it could have been anywhere from five to $500.00, you don't know, is that what you're telling us? A. Yes." The prosecutor went on to develop, again over objection, what the defendant was doing with $500 at 10:00 P.M. The defendant's answer was that he might have seen something he wanted to buy, but that he could not remember. Further cross, over objection, elicited the fact that the defendant had previously been stopped by the police for passing a red light and had been hit on the head with a nightstick. He was taken to the precinct and told the lieutenant about it; he responded that "his boys never did anything like that." He did not make a complaint to the Civilian Complaint Review Board or to an attorney.

### THE INDICTMENT SHOULD BE DISMISSED

The basic proof in this case which the People assert ties the defendant to the heroin which Maldonado found in the street is the testimony of Kozak and Miss Martino. In analyzing their testimony we must bear in mind that Officer Smith never saw anything thrown from defendant's car (although, according to Kozak, it was thrown from the driver's side) and that Maldonado who gave the bag containing heroin to Kozak admittedly never saw where it came from. Thus we come back to the contradictory and "incredible" testimony of Kozak and the testimony of Miss Martino. Kozak testified that the bag was thrown from in front of 169 Warwick Street—which he said was in the middle of the block—but it is clear from the testimony of Maldonado who lives right there that 169 is only about 75 feet from the corner of Arlington and Warwick Streets. Aside from that it defies belief that an experienced police officer having seen a telltale bag thrown from defendant's car would not have brought the defendant back to the scene of the throwing in an effort to retrieve it. Instead, according to him, he first took the defendant to the precinct and then, without admitting that he returned to the scene because of a telephone call to the police station, stated that on his own and without any other police officer present he went back to look for the bag. His testimony that he alone was given the bag by Maldonado was refuted by the latter who said that there were two police officers present and by the testimony of Miss Martino who also acknowledged the presence of more than one police officer. However, disregarding all that, it seems clear, at least to me, that there is no legal proof that the bag received in evidence was the same bag which Kozak allegedly saw thrown from defendant's motor vehicle. In this connection it should be recalled that it was picked up at a different place from that at which Kozak placed it and that the testimony of Miss Martino—a sick, elderly lady—was not at all helpful in that regard. While she testified on direct examination that she saw a bag thrown from the car that the police were pursuing, that statement was completely diluted by her subsequent testimony that she was not sure that the bag she saw a neighbor give to the police was the same bag she saw thrown from the car. Her testimony in that regard is as follows: "Q. I mean, are you sure it came out of the car? A. Unless somebody did it

from other places, I don't know. * * * Q. Is it possible that somebody else could have thrown that bag from the street? A. I don't know." In addition, she testified that the bag was in front of the house to the right of her house, although it is undisputed that 169 Warwick Street, in front of which Maldonado found the bag, is the house to the left of her house. Thus it seems clear that she could not and did not say that the bag which the unidentified neighbor gave the police was the bag she allegedly saw thrown from the car. Under all of the circumstances, I am persuaded that there was not a sufficient identification of the bag of heroin received in evidence and upon which defendant's guilt was predicated as the same bag which allegedly was thrown out of his car by the defendant. The judgment of conviction should therefore be reversed and the indictment dismissed (see *People v Mitchell,* 64 AD2d 119, *supra; People v Sibblies,* 63 AD2d 934). Were I not voting to dismiss, I would, in any event, vote for a new trial by reason of the following prejudicial errors which denied defendant a fair trial. 1. The persistent effort of the prosecutor to have the jury infer that defendant was a dealer in heroin because of the amount of cash he had with him clearly was improper, and in a case as doubtful as this one, deprived him of a fair trial. In *People v Jones* (62 AD2d 356), the defendant was charged with a single sale of narcotics. There, as here, the prosecutor poisoned the trial by proof that defendant had cash ($831) on his person when he was arrested. In holding that the proof thus elicited was manifestly prejudicial error, the court aptly noted that the only purpose for its introduction was to permit an inference by the jury that the possession of such an amount of currency was probative of the sale of illicit drugs as a business. Here, where the charge is drug possession and not drug sale, the error was even more egregious. 2. I agree with the majority that the trial court erred in permitting the prosecutor to bring out the facts that defendant had previously been arrested for a traffic infraction and that the defendant claimed to have been hit on the head with a nightstick by the arresting officer. In sum, the tactics of the prosecutor deprived the defendant of a fair trial and in a case such as this—clouded as it is with basic contradictory testimony—the errors complained of and particularly the attempt to picture the defendant as a heroin dealer require a reversal (see *People v Walker,* 66 AD2d 863).