Wachtler, J.
The principal question on this appeal is whether the defendant was deprived of his right to a fair trial because of a comment made by the prosecutor during summation. In our view the statement was prejudicial and the defendant is entitled to a new trial.
For several years the defendant and Stan Fulfaro were, according to the defendant, "very good friends.” Fulfaro was also a former drug addict who for some time had been working as a confidential paid informer for the New York City Police Department and the Federal Government. In early 1973 Fulfaro introduced his "brother Nick” to the defendant. Nick was actually an undercover New York City police officer named Nicholas Molfetta. On March 13, 1973 Stan and Nick went to an apartment at 9905 Glenwood Road, in the Canarsie section of Brooklyn, where they met the defendant and Joyce Light. During the course of an hour spent in the apartment Nick allegedly asked the defendant for some drugs. According to the officer the defendant produced a small tinfoil packet containing a white powder which the defendant said was "dope”, meaning heroin. After paying the defendant $25 Nick left the apartment together with Stan. A later analysis of the contents of the packet indicated that it contained heroin.
On April 10, 1973 Molfetta, accompanied by several other police officers, returned to the apartment armed with a search warrant. He knocked on the door and identified himself as Nick. When the door was opened he and the other officers rushed into the apartment.
The defendant, his wife Barbara, Joyce Light and Elizabeth Danile were in the living room. In an ashtray, on the living room coffee table, the officers found a jewelry box containing a small quantity of drugs consisting of two pieces of a brown *108 substance containing hashish, 2 pipes containing a residue of marijuana and a piece of spotted paper, in a tinfoil packet, which upon analysis was found to have "LSD present on it.” No other illegal drugs were found in the apartment.[1] However two "pen guns” were discovered in a bedroom dresser drawer and an unregistered rifle was recovered from the bedroom closet.
At trial the defendant denied selling drugs to Officer Molfetta and denied possessing the drugs and weapons seized at the Glenwood apartment. He testified that the apartment belonged to Joyce Light, that he did not live there, but resided with his parents in another part of Canarsie. The defendant’s estranged wife agreed that he lived with his parents and she with hers. They still met occasionally, particularly at Joyce Light’s Glenwood apartment. Elizabeth Danile also testified that the apartment belonged to Joyce Light. One of the officers who executed the warrant stated that the defendant admitted living at the apartment; another stated that the apartment belonged to Joyce Light and that the defendant denied living there. The defendant’s father testified that the defendant lived with his parents.
Joyce Light did not testify at the trial. Neither did the informer, Stan Fulfaro. One of the police officers testified that Stan had died prior to trial. Another said that "he was killed.”
During summation the prosecutor alluded to the informer’s death and made certain comments which form the basis of the present appeal.
"[The Prosecutor]: We know Stan is dead. Why he is dead, we don’t know. One of the officers said he was killed. Maybe the price that Stan paid for the one decent act—
"Mr. Dunaif [defense counsel]: Your Honor, I object to this.
"The Court: No. Mr. Dunaif, the objection is overruled.
"Mr. Dunaif: I respectfully except.
"The Court: There was testimony, was there not, that Stan was killed?
"Mr. Dunaif: There is no testimony that he paid a price to society.
*109 "The Court: Nobody said there was. The District Attorney is arguing.
"Mr. Dunaif: He just made that statement.
"The Court: Let counsel argue. Objection overruled.
"[The Prosecutor]: Perhaps the price he paid for his new found profession”.
At the conclusion of the trial the jury found the defendant guilty of possession and sale of drugs and unlawful possession of weapons.[2]
On this appeal the defendant claims that he was deprived of a fair trial because the "obvious, and improper message conveyed to the jury by [the prosecutor’s] * * * remark was that appellant was responsible for the informant’s death.”
It is, of course, the right of counsel during summation "to comment upon every pertinent matter of fact bearing upon the questions the jury have to decide” (Williams v Brooklyn El. R. R. Co., 126 NY 96, 102; People v Fielding, 158 NY 542; People v Benham, 160 NY 402; People v Priori, 164 NY 459). In criminal trials it is a right guaranteed to the defendant (Herring v New York, 422 US 853) and the prosecutor alike (People v Mull, 167 NY 247; People v Doody, 172 NY 165; CPL 260.30, subds 8, 9). And although counsel is to be afforded "the widest latitude by way of comment, denunciation or appeal in advocating his cause” (Williams, supra, at p 103) summation is not an unbridled debate in which the restraints imposed at trial are cast aside so that counsel may employ all the rhetorical devices at his command. There are certain well-defined limits.
It is fundamental that the jury must decide the issues on the evidence, and therefore fundamental that counsel, in summing up, must stay within "the four corners of the evidence” (Williams, supra, at p 103) and avoid irrelevant comments which have no bearing on any legitimate issue in the case (People v Carborano, 301 NY 39, 42; People v Tassiello, 300 NY 425). Thus the District Attorney may not refer to *110 matters not in evidence (People v Fielding, 158 NY 542, supra; People v Esposito, 224 NY 370; People v Dixon, 231 NY 111; People v Jackson, 7 NY2d 142) or call upon the jury to draw conclusions which are not fairly inferrable from the evidence (People v Van Aken, 217 NY 532; People v Creasy, 236 NY 205; People v Jenman, 296 NY 269; People v Griffin, 29 NY2d 91). Above all he should not seek to lead the jury away from the issues by drawing irrelevant and inflammatory conclusions which have a decided tendency to prejudice the jury against the defendant (see, e.g., People v Posner, 273 NY 184, 190; People v Levan, 295 NY 26, 36; People v Carbonaro, supra; Berger v United States, 295 US 78). He may not, for instance, try to convey to the jury, by insinuation, suggestion or speculation, the impression that the defendant is guilty of other crimes not in issue at the trial (see, e.g., People v Carbonaro, supra; cf. People v Doody, 172 NY 165, supra).
Here the prosecutor’s remark definitely conveys the impression that Fulfaro was killed by those he had informed upon, one of whom was this defendant. This suggestion that the defendant, or friends of his, might have committed homicide in order to affect the outcome of the trial was certainly not a fair comment on the evidence. More important, it was totally irrelevant to any legitimate issue presented at the trial.
There was, of course, nothing in the record to connect the defendant with the informer’s death; nor was there even any evidence indicating that the death was the result of the informer’s "new found profession.” In fact, apart from one stray reference to the informer’s having been "killed”,[3] there was nothing to indicate that his death was the result of a criminal act. This is completely understandable and proper since the cause of his death had no relevance to any of the issues the jury had to decide. It may well be that the People had the right to see that the jury was made aware of Fulfaro’s death so that no unfavorable interference could be drawn from their failure to produce him at trial. For this purpose a simple statement on the fact of his death was sufficient. Any reference or speculative comment as to the cause or reason for his death was utterly gratuitous and, under the circumstances, could only have served to blur the issues and prejudice the jury against the accused.
*111 That is not to say that the trial was hopelessly flawed once the prosecutor made the improper remarks. It is possible that the court might have dissipated the prejudice by promptly and clearly advising the jury that the comments were improper and must be completely disregarded (see, e.g., People v Broady; 5 NY2d 500; People v Benham, 160 NY 402). But when, as here, the court overrules the defendant’s objections, and gives "standing to the statement of the District Attorney as legitimate argument” (People v Lovello, 1 AD2d 162, 169 [Peck, J., dissenting], cited with approval People v Broady, supra, at p 516), the possibility of prejudice is greatly enhanced. Then the court has indicated to the jury "that there was no impropriety” (People v Lovello, 1 NY2d 436, 439) and with the court’s sanction, they may pursue the line of reasoning suggested by the prosecutor in determining the defendant’s guilt (People v Minkowitz, 220 NY 399, 405; People v Mull, 167 NY 247, 255, supra; cf. People v Van Aken 217 NY 532, supra; People v Becker, 210 NY 274, 292; People v Ohanian, 245 NY 227).
The order appealed from should be reversed and a new trial granted.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order reversed and new trial ordered.

. The officers also seized a motley assortment of pills, tablets and capsules, the contents of which were never established at trial.

. The defendant was found guilty of criminal sale of a dangerous drug in the third degree, and criminal possession of a dangerous drug in the fourth and sixth degrees based on Molfetta’s testimony regarding the sale on March 13, 1973. He was also found guilty of two counts of criminal possession of drugs in the sixth degree, two counts of possession of a weapon as a misdemeanor, unlawfully possessing a rifle without a permit, and unlawfully possessing an unregistered rifle. Conviction on these latter counts was based on the evidence seized pursuant to the warrant executed on April 10, 1973.

. One of the police officers in being questioned as to how long he had known Stan Fulfaro stated: "Approximately eight or nine months before he was killed.” This is the only reference to the fact that the death might have been a killing.