THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PEDRO HERNANDEZ, Appellant.

First Department, January 18, 1983

APPEARANCES OF COUNSEL

*Jonathan M. Jacobson* of counsel (*Lord, Day & Lord,* attorneys), for appellant.

*Richard E. Haftel* of counsel (*Steven R. Kartagener* with him on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

SILVERMAN, J.

Defendant appeals from a judgment of the Supreme Court, Bronx County, after jury trial, convicting him of the crimes of burglary in the first degree (Penal Law, § 140.30, subd 2), assault in the second degree (Penal Law, § 120.05, subd 6), grand larceny in the third degree (Penal Law, § 155.30, subd 1), and criminal mischief in the fourth degree (Penal Law, § 145.00, subd 1), and sentencing him thereon.

Defendant contends that (1) his trial was unfair because of certain remarks by the District Attorney about the possibility of accomplices, and a related charge by the court, and (2) there was insufficient evidence of physical injury, an essential element of the crimes of burglary in the first degree and assault in the second degree, and of the value of the stolen property, an essential element of grand larceny in the third degree.

## A. *Claimed Errors in Summation and Charge*

As always when there is a claim of unfairness at trial, one of our threshold problems as an appellate court is to try to recapture from the cold record what went on "live" in the trial court, what the real contested issues were and what was the probable effect of particular criticized remarks, frequently presented to us not quite in context and somewhat out of focus. We must try to see the claims of error in the perspective of the whole case.

█ 1. Guilt of burglary could hardly be more clearly established. Defendant was found in the previously locked apartment, with a broken window, and with a television set moved to the door, apparently preparatory to removal. His defense is the defense we have so often seen by burglars caught *in flagrante,* i.e., that he came upon the scene after someone else had committed the burglary and innocently wandered in — in this case to return the complainant's dog. There was not even time for a decent interval between the commission of the burglary and defendant's innocent wandering into the apartment. The complainant was only out of the apartment for a total of 45 minutes. And when the complainant returned and found the defen-

dant there, the burglar or burglars had not yet completed their work, the television set having been moved closer to the door but not yet removed from the apartment. Obviously and quite properly the jury did not believe that defendant had nothing to do with the burglary.

2. Defendant criticizes the following statement by the District Attorney in summation:

"Mr. Lazarus is confused about where the property was.

"Ladies and gentlemen, I submit to you that there were more people in the apartment with the defendant: someone stood at the window, three feet away from the fire escape; and someone stood on the fire escape and the property, easy enough to carry down or up the fire escape, was handed out to that other person who left before the defendant was able to, because he lived in the building and all he had to do was go downstairs."

His major point is that there was no evidence that there were any accomplices and that this statement amounted to the District Attorney testifying as to facts not in evidence.

To begin with there was no objection by defendant's attorney to this remark. The failure to object is important for these reasons: Under our system of law the trial court is where the issues are to be thrashed out, the contentions of law and fact made, and the final judgment rendered; the appellate courts merely review the actions of the trial court for significant errors. Failure to object at the trial level in time for effective correction (cf. CPL 470.05, subd 2) and urging of error for the first time on appeal, thus strikes at the integrity of the trial process. As the Court of Appeals recently said: "There is neither constitutional nor jurisprudential error in permitting guilt to be determined under a penal statute as construed by the common assumption of both attorneys and the court. To hold otherwise is to encourage gamesmanship and waste judicial resources in order to protect a defendant against a claimed error protection against which requires no more than a specific objection on his part." (*People v Dekle*, 56 NY2d 835, 837.) More important, for our purposes in the effort to recapture what went on at the trial, the failure of the persons who were there, particularly the lawyers charged with alertly watch-

ing over the defendant's interest, to object, suggests that perhaps nobody thought the remark was improper, and that in context it appeared to be within a reasonable range of argument and comment.

Further examination of the record supports this view:

The complainant having testified that a great many objects were stolen, defendant's attorney pointed to the fact that none of that stolen property was found on the defendant; he thus argued that someone else must have stolen the property. He went further. He suggested not only that someone else was the burglar, but suggested that there was more than one burglar, saying, "I have difficulty believing one man could take all that." And he also suggested that the burglars broke the window, and took the property "and when they took off, they went up the stairway to the roof." Thus the District Attorney in his summation was merely pointing out a possible scenario (cf. *People v Harris,* 84 AD2d 63, 103, affd 57 NY2d 335), that included all the defendant's attorney's suggestions as to how the crime was committed, yet left unshaken the central fact of defendant's guilty participation, whether alone or with others. It was in this context that the District Attorney said that defendant's attorney was "confused about where the property was." And in this context, the phrase "I submit to you" means no more than "I suggest or argue."

In a way the most striking part of the District Attorney's statement is "someone stood at the window, three feet away from the fire escape". At first blush this suggests such specific knowledge of where the hypothetical accomplices were standing as to move the statement from argument to a suggestion of factual knowledge by the District Attorney. But on closer examination, the "three feet away from the fire escape" is not a description of where someone was standing but is a description, supported by the testimony, of the location of the broken window, i.e., three feet away from the fire escape. There were two windows in the room. One opened on the fire escape; that window was untampered with and secured with a locked gate. A second window, three feet from the fire escape window, was broken and, according to the victim's testimony, must have

been broken sometime in the 45 minutes he was out of the apartment.

The Judge explicitly instructed the jury to decide "solely on the evidence admitted during the trial," and not to "indulge in speculation or guesswork"; and that the jury's own recollection of the facts presented by the evidence is what controls "regardless of what counsel on either side of the case may say about the facts."

3. Defendant objects to the fact that the court answered yes to the jurors' question: "If an accomplice to a burglary breaks a window to effect entry to the premises, are all participants in the burglary guilty of criminal mischief in the fourth degree?" Defendant's criticism is that there was no evidence of accomplices.

The court's instruction was correct, and in the circumstances, appropriate.

As we have seen, both attorneys had discussed the possibility that there might have been others involved in the burglary. The jurors did not know whether there might have been others involved, but they could not exclude that possibility. The jurors said in the course of an earlier question: "If we believe, *based on the evidence,* that the window was broken during the course of the crime to obtain entry, but some believe that others (accomplice or accomplices) *may* have caused the breakage, what does the law have to say regarding the possibility of accomplices in these circumstances?" (Emphasis added.)

Convinced that the defendant was personally involved in the burglary — whether alone or with others — the jury was not troubled about the defendant's responsibility for the burglary, so they did not ask any questions about accomplices in relation to the burglary charge. They limited their accomplices questions to the criminal mischief charge — the broken window. They said: "Our question has to do with the sixth count, criminal mischief in the fourth degree."

They phrased their question in terms of accomplices and asked for the accomplice rule. The Judge thought at first in terms of the accomplice testimony rule of CPL 60.22, i.e., the effect to be given by a jury to the testimony of an

accomplice. As there had been no testimony by an accomplice, the Judge said that he had said nothing about accomplices, and that he could not understand the question.

The jury then refined their question, saying that their problem was one of acting in concert (accessory) liability rather than accomplice testimony. They asked: "If an accomplice to a burglary breaks a window to effect entry to the premises, are all participants in the burglary guilty of criminal mischief in the fourth degree?" Now the Judge understood what was troubling the jury and he correctly answered their question "yes." (Cf. *People v Farmer,* 90 AD2d 106.)

It is thus clear that the jury was not at all influenced, in convicting the defendant of burglary, by anything about accomplices; and that ultimately they fully understood that even as to criminal mischief, if defendant was a participant in the burglary and the window was broken in furtherance of the burglary, it did not matter whether he personally had broken the window.

B. *Physical Injury*

■ There was testimony that in the course of the confrontation between complainant and defendant, complainant struck defendant with some dog straps that he had, and defendant struck complainant with some dull black object that he had in his hand, perhaps a camera or camera case. There was some testimony that as a result the complainant may have suffered a concussion. While this testimony was technically sufficient to raise an issue of fact, we think that on the facts of this case, the evidence that complainant suffered a "physical injury" within the meaning of subdivision 9 of section 10.00 of the Penal Law is so insubstantial that in the exercise of our jurisdiction to review the facts we should not permit any conviction of which physical injury was an essential element to stand.

Accordingly, pursuant to CPL 470.15 (subd 2, par [a]) we modify the judgment as follows: We change the conviction for burglary in the first degree under subdivision 2 of section 140.30 of the Penal Law to a conviction for burglary in the second degree under subdivision 2 of section 140.25

of the Penal Law; and we change the conviction for assault in the second degree under subdivision 6 of section 120.05 of the Penal Law to a conviction for attempt to commit the crime of assault in the second degree under section 110.00 and subdivision 6 of section 120.05 of the Penal Law; and we remit the case to the Trial Term, Supreme Court, for resentence accordingly, pursuant to CPL 470.20 (subd 4).

## C. *Grand Larceny in the Third Degree*

█ The evidence as to the value of the stolen property was not precise; there was evidence as to the cost of some of the items and a listing of a great many other items of a kind with which most people are familiar. On this evidence a jury could reasonably find that the value of the stolen property exceeded $250.

The judgment of the Supreme Court, Bronx County (HOLLAND, J.), rendered April 23, 1981 convicting and sentencing defendant should be modified, on the facts, to the extent that the conviction for burglary in the first degree should be changed to a conviction for burglary in the second degree under subdivision 2 of section 140.25 of the Penal Law, and the conviction for assault in the second degree should be changed to a conviction for attempt to commit the crime of assault in the second degree under section 110.00 and subdivision 6 of section 120.05 of the Penal Law, and the case should be remitted to the Trial Term of the Supreme Court, Bronx County, with a direction that that court sentence the defendant accordingly; and the judgment should otherwise be affirmed.

CARRO, J. (dissenting). The defendant was deprived of his fundamental right to a fair trial by virtue of prejudicial speculative remarks made by the People in their summation, in an attempt to explain away the failure to find any evidence of the missing articles in the defendant's possession. The Assistant District Attorney suggested that the defendant was aided in the commission of this crime by an accomplice or accomplices, whereas there was no basis in the record to support that theory. The court compounded the error when, after receiving three notes from the jury indicating its confusion with respect to the People's theory, it declined a defense request to charge that no testimony or

other mention had been adduced at trial concerning any accomplice involvement, other than in the summation, and the jury was therefore not to consider the question of an accomplice but was to be limited to the evidence. It in fact gave credence to the accomplice theory by indicating to the jurors that they might convict the defendant of criminal mischief even if they believed an accomplice and not the defendant had broken the window.

Both the prosecutrix and the court infringed upon and improperly influenced the fact finding function of the jury by supplying a scenario not fairly inferable from the record to explain away what might otherwise have been a troublesome point to the jury in its resolution of the issue of credibility as between the complainant and the defendant.

The complaining witness, 73-year-old Leo Kingoff, lived in a sixth floor walk-up in The Bronx and owned six dogs. At about 10 P.M. of the night of this incident he took three of them for a 30 minute walk. Shortly afterward, he walked the other three for about 45 minutes. When he went up the stairs to his apartment, he found the door ajar, and upon entering saw that the lights were on and his television set was on the floor near the door. He looked toward the bedroom and saw the defendant, his downstairs neighbor, emerge. Kingoff was holding the three metal chain leashes in his hand. He testified that he asked Hernandez what he was doing there, and, when Hernandez did not answer, he struck him in the head or face with the chains. Hernandez had a bulky object in his hand, which appeared to be a camera case, and he then struck Kingoff in the head with it and left the apartment. Kingoff called the police and looked around the apartment. He discovered that his fire escape window was broken and open and that a number of items were missing. When the police arrived shortly thereafter, they arrested Hernandez and searched his person and his apartment, finding none of the missing articles.

Hernandez testified that, as he left his apartment to go to the store, he saw one of Kingoff's dogs loose in the hallway. This was unusual and he took the dog up to the apartment. When he got there he saw that the door was open. He called out and when he received no answer he entered. He called Kingoff's name several times. Seeing

the bedroom light on he entered and noticed that the room was in disarray. He left the bedroom and was suddenly struck in the head. He was shocked and confused. He looked at the complainant and said, "Leo" and then walked out of the apartment. He had nothing in his hands nor did he strike Kingoff. He went back to his apartment, took off his blood stained shirt and washed his head with cold water. Shortly thereafter, the police came to his apartment and arrested him.

It is the province of the jury to determine credibility; whether to believe or disbelieve a defendant's explanation of his conduct. The jurors must be given an untrammeled opportunity to do just that, without improper influence from such authoritative and commanding figures as the Assistant District Attorney and the court itself. Any so-called "scenario" suggested by the prosecution must have a basis in the record and not be made out of whole cloth.

The People maintain that the defense "opened the door" by its own comments in summation. Defense counsel had stated,

"all of this material, this fairly large bundle of material disappeared, was not found by the police or in Mr. Hernandez' apartment, was not found under any stairwell, was not found in any attic or on any roof, was not found anyplace.

"And the only logical assumption why it wasn't found anyplace, is that Mr. Hernandez didn't take it. Somebody else took it and just kept going and walked away with it. Right?"

The Assistant District Attorney, for her part, responded, "Ladies and gentlemen, I submit to you that there were more people in the apartment with the defendant: someone stood at the window, three feet away from the fire escape; and someone stood on the fire escape and the property, easy enough to carry down or up the fire escape, was handed out to that other person who left before the defendant was able to, because he lived in the building and all he had to do was go downstairs." and, "Again I submit that that's where the property that Mr. Kingoff lost went, down the fire escape and up the fire escape, having been handed by the defendant to the person on the fire escape. And the defendant

going to the door to pick up that T.V., to go downstairs to his apartment, but was surprised by the complainant, and when he came back too early for the defendant's plan." Such was an inappropriate response, where neither the theory of the People's case nor one word of testimony referred to the presence of accomplices, but was rather the personal belief of the prosecutrix. It was a response out of keeping with the duties and responsibilities of a public prosecutor and an attempt to influence the jury in resolving the credibility issue in favor of the People's witness. That the jury was influenced and was confused is evidenced by its three successive notes to the court concerning that same issue and by its quick verdict upon the court's reply to the third note, in effect adopting the accomplice theory.

"It is fundamental that the jury must decide the issues on the evidence, and therefore fundamental that counsel, in summing up, must stay within 'the four corners of the evidence' * * * Thus the District Attorney may not refer to matters not in evidence * * * or call upon the jury to draw conclusions which are not fairly inferrable from the evidence" (*People v Ashwal,* 39 NY2d 105, 109-110). "Not only does a defendant have a constitutional right to a fair trial, but such right is fundamental to our whole system of jurisprudence. We hold that this defendant * * * was deprived of such a right by virtue of various remarks made in the course of the People's summation and that he should have a new trial * * * The Assistant District Attorney had no right to refer to matters not in evidence or to ask the jury to draw such a conclusion which was not fairly inferrable from the evidence" (*People v Wright,* 41 NY2d 172, 173-175).

I further note that the evidence submitted appears insufficient as a matter of law to establish beyond a reasonable doubt that the complainant suffered physical injury within the meaning of subdivision 6 of section 120.05 and subdivision 9 of section 10 of the Penal Law, i.e., "impairment of physical condition or substantial pain"; or that the value of the stolen property exceeded $250, a prerequisite for conviction under subdivision 1 of section 155.30 of the Penal Law.

Kingoff testified that he had been struck on the head once by what appeared to be a camera case and was "a little stunned". He then called the police and checked the apartment over while waiting for them. He developed a lump on his forehead and a slight headache for two or three days, which then went away. He had no other physical complaints about the incident and had no intention of going to the doctor until persuaded by the Assistant District Attorney. Dr. Ganem saw Mr. Kingoff four days after the incident, when he no longer had a headache or any marks on his head. He made his diagnosis of "concussion syndrome" from the history supplied by the patient.

It is evident that the injury does not come up to the level of "impairment of physical condition" (*People v Morales,* 75 AD2d 745; *Matter of Derrick M.,* 63 AD2d 932) or "substantial pain" (*Matter of Philip A.,* 49 NY2d 198) required by the statute for conviction under subdivision 6 of section 120.05 of the Penal Law.

No evidence was submitted as to the market value at the time of the theft of any of the various items alleged to have been stolen. Most of them had been purchased or received as gifts years before, many already used and many in damaged condition. No effort was made to properly catalog the missing items or to establish their market value as aggregating more than $250, the amount necessary for conviction of grand larceny in the third degree under subdivision 1 of section 155.30 of the Penal Law (*People v Bell,* 55 AD2d 624).

The judgment of the Supreme Court, Bronx County (HOLLAND, J.), rendered April 23, 1981, convicting defendant-appellant, after trial, of burglary in the first degree, assault in the second degree, grand larceny in the third degree and criminal mischief in the fourth degree, and sentencing him to three concurrent indeterminate terms of imprisonment, the greatest of which is 5 to 15 years, should be reversed on the law and in the interest of justice, and should be remanded for new trial.

SANDLER, J. P., and ASCH, J., concur with SILVERMAN, J.; CARRO, J., dissents in an opinion.

Judgment, Supreme Court, Bronx County, rendered on April 23, 1981, modified, on the facts, to the extent that the

conviction of burglary in the first degree is to be changed to a conviction of burglary in the second degree under subdivision 2 of section 140.25 of the Penal Law, and the conviction for assault in the second degree is to be changed to a conviction for attempt to commit the crime of assault in the second degree under section 110.00 and subdivision 6 of section 120.05 of the Penal Law, and the case remitted to the Trial Term of the Supreme Court, Bronx County, with a direction that that court sentence the defendant accordingly; and the judgment is otherwise affirmed.