■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BOBBY WILLIS, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Leahy, J.), rendered March 12, 1979, convicting him of attempted murder in the second degree, criminal possession of a weapon in the second degree and assault in the first degree, upon a jury verdict, and imposing sentence. ¶ Judgment reversed, as a matter of discretion in the interest of justice, and new trial ordered. ¶ The complaining witness and defendant had known each other for over a decade. The complainant accused defendant of shooting him five times in the early morning of February 9, 1978. The complainant was apparently the sole eyewitness to the crimes. Under the People's theory, the motive for the shooting was that the complainant had stolen money from defendant's employers, while defendant contended he was maliciously accused of the shooting because he and complainant had had an argument concerning a woman in the summer of 1977. The prosecutor twice volunteered to the court in the presence of the jury that the complainant was in protective custody, and on a third occasion elicited testimony from the complainant that he was being protected. Under the circumstances, this information was highly prejudicial (see *People v Hendricks,* 56 AD2d 893), especially in conjunction with the prosecutor's inflammatory summation, of which we reproduce only a portion of its improper aspects. The prosecutor branded defendant a professional hired killer and described how such a criminal operates: "How does this type of murder take place, the type of murder that I am suggesting to you was attempted? Does it take place at long range? No, no. How do these people kill? They get up close, they stick it in your face, and pull the trigger. That's how these people kill, because they are pros." ¶ The prosecutor further attempted to cloud the pertinent issues: ¶ "This is the issue in this case. Does this man have a right to kill somebody? That's the issue. Did he have a right to try to kill somebody? Does anybody have a right to put bullets into somebody's skull or into their chest * * * ¶ "You know what kind of people you are dealing with here. I don't have to tell you. I don't have to explain it because you are 12 intelligent men and women." ¶ By casting defendant as a professional killer, the prosecutor insinuated that defendant had committed similar crimes in the past (see *People v Ashwal,* 39 NY2d 105, 110). The calculated and unnecessary references to the fact that the complainant was in protective custody potentially fed the inferences that the complainant's life was in danger because he was testifying against defendant, and that defendant or his employers were responsible for the need to place the complainant in protective custody. ¶ In view of the evidence adduced at trial, we cannot say the strength of the case was such that the prosecutor's improper

conduct did not influence the jury and taint its verdict. Accordingly, the judgment must be reversed and a new trial ordered. Titone, J. P., O'Connor, Brown and Eiber, JJ., concur.