■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALBERT C. HANSEN, Appellant.—Judgment, Supreme Court, New York County (James Leff, J.), rendered January 15, 1987, which convicted defendant after jury trial of tampering with physical evidence (Penal Law § 215.40 [2]) and official misconduct (Penal Law § 195.00 [2]) and sentenced him to a $1,000 fine on the tampering charge and an unconditional discharge on the misconduct charge, unanimously reversed, on the law, and the case remanded for a new trial.

Defendant was a Port Authority police officer who was tried and convicted together with codefendant Sergeant George Compas for crimes arising from their actions in concealing evidence and lying to the authorities following an incident in which a prisoner under their supervision committed suicide in a holding cell at the police station in the Port Authority bus terminal on November 2, 1985.

Defendant Hansen had arrested the prisoner, Leonard

Jones, earlier in the day. Jones, who was apparently intoxicated and shouting obscenities at people in the bus station, was told by Hansen to leave the station. A short time later, Jones returned and lunged at Hansen with a knife. After a scuffle in which Hansen punched Jones in the head and Jones fell down a stairway, Officer Hansen arrested Jones and brought him to the Port Authority police station where he was locked in a holding cell.

During the ensuing hours, Hansen completed the requisite paperwork and at one point he took Jones from the cell to another room to be photographed. When he returned Jones to the cell, Hansen did not handcuff him nor did he remove his shoelaces from his high-top sneakers. Later in the day when Hansen went to the cell to take Jones to central booking, he found Jones lifeless, hanging over the cell door by his shoelace. As Hansen brought Jones down, the shoelace snapped. Hansen removed the shoelace and tossed it aside. After the initial rescue efforts of Hansen, Compas, and other police officers, Jones was taken to St. Clare's Hospital, where he was pronounced dead.

Later, Compas went over to the cell "out of curiosity", found the shoelace on the bench, and placed it in his pocket. Hansen was present and saw Compas's actions. They made eye contact but did not say a word to each other.

From the very inception of the incident, Hansen misrepresented the fact and did not tell anyone about the true manner in which he had discovered the body and discarded the shoelace. Initially he misrepresented what occurred to his various superior officers, then to investigating New York City police detectives, and finally to Assistant District Attorneys who arrived on the scene that evening to investigate.

An autopsy the next day showed that Jones had a mark around his neck and other injuries indicating that he died from ligature strangulation as a result of a hanging. After the autopsy the District Attorney conducted further interviews in which Hansen revealed the existence of the shoelace and that he had seen Compas remove it. Compas later came forward with the shoelace. An examination of the shoelace showed that it could have caused the ligature mark found on Jones' neck.

After waiving immunity, both appellant and Compas in February 1986 testified before a Grand Jury investigating the matter. Hansen admitted that he had found Jones hanging from the shoelace and that he had not told the truth about the incident to the various investigators.

Hansen and Compas were each indicted for one count of tampering with physical evidence and one count of official misconduct. The case proceeded to trial where the foregoing evidence was presented to the jury, which convicted the defendants of the crimes charged.

On this appeal, defendant Hansen claims that under a proper construction of the statute, the evidence was insufficient to convict him of tampering with evidence, and that his conviction of this charge violated his privilege against self-incrimination. We find no merit to these arguments. However, we reverse because we find merit to appellant's final contention, that he was denied a fair trial by prejudicial statements in the prosecutor's summation. The summation was replete with remarks, made over repeated objection, which were irrelevant and inflammatory and undoubtedly appealed to the passion and prejudice of the jury and deprived the defendant of a fair trial.

Throughout the summation, the prosecutor unfairly injected her own personal views and conveyed her own personal opinion of the case. The following is illustrative of such improper remarks. "It is hard for me to convey my sense of outrage."

The prosecutor repeatedly strayed from the issues of the case by referring to her own sense of personal outrage without reference to the proof of the elements of the crimes charged. This appeal to passion and invocation of her personal standard might well have persuaded the jurors that if the question of guilt was close there was nevertheless an imperative that demanded satisfaction. The prosecutor may not assert his or her personal opinion as to the justness of the "cause". Such emotional appeals are improper in summation. *(See, People v De Jesus,* 137 AD2d 761.)

Furthermore, the prosecutor appealed to passion and sentiment by suggesting several times that defendant was contemptuous of Jones and had little respect for human life. "After all, who is Leonard Jones? He is just some skel, so nobody cares about him. So it is OK to cover up what happened to him. So his family has no right to know the circumstances of his death." "[Defendants] don't care what right the public has to know about a prisoner's death in police custody, and [defendants] don't care about Leonard Jones' family's right to know." "It's just Leonard Jones, it is just some skel, just some bum from the Port Authority. What difference does it make?"

The prosecutor also improperly vouched for the credibility of the witnesses and placed the prestige of her office in issue.

*(See, People v Morris,* 42 AD2d 968.) At one point she stated that a police captain's testimony must be true because it is corroborated by the testimony of an Assistant District Attorney who was at the scene. At another point, counsel improperly denigrated the defendant's witnesses by stating: "And what does the defense case consist of? They bring in character evidence. If any one of us committed a crime we all would have our friends and buddies come in here and say what great people we are. That evidence is completely irrelevant." *(See, People v Hicks,* 102 AD2d 173; *People v Fernandez,* 82 AD2d 922; *People v Schaaff,* 71 AD2d 630.)

A prosecutor in summation must avoid irrelevant comments which have no bearing on the legitimate issues in the case and above all should not seek to lead the jury away from the issues by drawing irrelevant and inflammatory conclusions which have a decided tendency to prejudice the jury against the defendant. *(People v Ashwal,* 39 NY2d 105.) The cumulative effect of the myriad of improper comments in the summation prejudiced the defendant and deprived him of the right to a fair trial especially here where his guilt of the particular crimes charged was not overwhelming. Accordingly, the conviction is reversed and the case remanded for a new trial. Concur—Kupferman, J. P., Asch, Rosenberger, Ellerin and Smith, JJ.