■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL DAMES, Appellant. [617 NYS2d 850] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Kramer, J.), rendered March 28, 1991, convicting him of criminal sale of a controlled substance in the third degree and criminal possession of controlled substance in the third degree (two counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

On August 5, 1990, Undercover Police Officer 3497, followed at a distance by his "ghost", Police Officer Ian Bailey, walked to the corner of West 23rd Street and Mermaid Avenue in Coney Island as part of a so-called "buy and bust" operation. As he walked toward the corner, the undercover officer was approached by Pedro Martinez, who after ascertaining that the undercover officer wanted to purchase cocaine, led him to a playground in front of 2832 West 23rd Street. Leaving the undercover officer behind, Martinez spoke with a jewelry-laden individual dubbed "J.D. Gold", the codefendant herein. "J.D. Gold" thereupon asked the undercover officer what he wanted, and upon being apprised by the undercover officer that he wanted "a twenty", "J.D. Gold" nodded in the direction of a third individual, dubbed "J.D. Do-Rag" (the defendant herein) in reference to his head dress. "J.D. Do-Rag", who was sitting on a park bench, thereupon reached into a bag which was situated at his feet and handed a tinfoil package to the undercover officer in exchange for $20 in prerecorded money. Significantly, Police Officer Bailey, pretending to be engaged in a telephone conversation at a nearby phone booth, witnessed the entire transaction from a distance of three to five feet.

After the undercover effected the transaction, he returned to his vehicle and radioed the descriptions of "J.D. Gold" and "J.D. Do-Rag" to his back-up team. Specifically, he described "J.D. Do-Rag" as a black male, with a mustache and "little" beard, wearing a blue "do-rag", gray button-down shirt, blue jeans, and black sneakers. Further, he described "J.D. Gold" as a bearded male, sporting "a lot of jewelry" and wearing an off-white shirt with blue stripes, gray pants, and white sneakers with red stripes. Bailey also left the scene, but not before

approaching the suspects to inquire as to the whereabouts of a fictitious person with whom Bailey was supposed to meet. According to Bailey, this allowed him to quiet any suspicions which may have been harbored by the suspects regarding his presence and, more importantly, permitted him to gain a closer look at the individuals with whom the undercover officer had made the subject transaction.

Approximately three minutes after Bailey left the scene, he returned and arrested the defendant Michael Dames, identified by Bailey at trial as "J.D. Do-Rag", and the codefendant Douglas Oakley, identified by Bailey at trial as "J.D. Gold". Bailey described Dames as wearing a "blue do-rag, gray shirt, black nylon t-shirt, blue jeans, and black sneakers". He further testified that he saw no other individuals in the park on the evening in question wearing a blue do-rag. Bailey described Oakley as wearing a "white to off-white shirt with blue vertical stripes, gray pants, with white sneakers with red stripes, and the gold [jewelry]". He further testified that he saw no other individuals in the park on the evening in question wearing the amount of jewelry that Oakley was wearing. Incident to the arrest, Bailey recovered a bag from under the bench on which Oakley had been seated. The bag, which Bailey testified was the same bag from which the subject tinfoil package had been produced, contained four similar tinfoil packages. In addition, Bailey recovered the $20 in prerecorded money from Dames and $916 in cash from Oakley. Approximately five minutes after the buy had occurred, the undercover officer drove by the arrest scene and positively identified the defendant and his codefendant as the two men with whom he had conducted the subject transaction.

During the trial certain errors occurred which resulted in the improper bolstering of the undercover officer's identification testimony. We conclude, however, that the cumulative effect of these errors was harmless (see, People v Crimmins, 36 NY2d 230, 242). Given the recovery of the drugs and the prerecorded money, as well as the defendant's unique characteristics and his arrest by an officer who actually witnessed the transaction, the record evinces that there was overwhelming proof of the defendant's guilt (see, People v Crimmins, supra). Moreover, there is not a significant probability that the jury would have acquitted the defendant had it not been for the bolstering which occurred (see, People v Crimmins, supra). Indeed, even if the jury had completely discredited the undercover officer's identification testimony, in order to acquit the defendant it would have had to similarly disregard (1) the

recovery of the drugs from the bag used by the codefendant in effecting the subject transaction, (2) the recovery of the prerecorded money from the defendant, (3) the apprehension of the defendant in close temporal and spatial proximity to the subject transaction, (4) the specific descriptions provided by the undercover officer and the "ghosting" Officer Bailey, and, most importantly, (5) the arrest of the defendant by Officer Bailey, who had actually witnessed the subject transaction from a veritable arm's length. Given this unimpeached body of evidence, we conclude that any error committed by the Supreme Court was harmless *(see, People v Crimmins, supra).*

The defendant's remaining contentions are either unpreserved for appellate review *(see,* CPL 470.05 [2]) or without merit *(see, People v Darby,* 75 NY2d 449, 453; *People v Galloway,* 54 NY2d 396; *People v Ashwal,* 39 NY2d 105, 109). Pizzuto, J. P., Santucci, Hart and Goldstein, JJ., concur.