■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NATHAN SAUNDERS, Appellant. [691 NYS2d 197] —Cardona, P. J. Appeal from a judgment of the Supreme Court (Keegan, J.), rendered July 27, 1995 in Albany County, upon a verdict convicting defendant of the crimes of kidnapping in the first degree (two counts), kidnapping in the second degree, assault in the second degree, escape in the second degree, endangering the welfare of a child (two counts) and unlawful imprisonment in the first degree.

On the morning of August 29, 1994, defendant, an inmate at Hudson Correctional Facility in Columbia County, walked away from a supervised kitchen work detail at the State Department of Correctional Services (hereinafter DOCS) training academy in the City of Albany. Before leaving, defendant called his 15-year-old former girlfriend (hereinafter the victim) and told her he was coming home on a seven-day furlough. The victim lived with her mother and defendant's eight-month-old daughter. Defendant arrived at her apartment at approximately 9:30 A.M., came inside and locked the door. He showed her the knife and said, "Do you remember when I said I was going to kill you?" He had threatened her two weeks earlier when he asked her if she was cheating on him. Defendant asked her about a boy she was allegedly seeing and punched her twice in the forehead. He hit her on the left hand with a stick, choked her, bit her on the cheek, and inflicted nine superficial knife wounds about her left shoulder.

Meanwhile, Vernon Fonda and other investigators from DOCS' Inspector General's office arrived at the victim's apartment. At their request the victim's mother unlocked the door and gave them permission to enter, which they did at approximately 1:00 P.M. Fonda found defendant and the victim inside a bedroom. Upon seeing the investigators, defendant jumped up, grabbed the victim and placed a knife to her throat. He refused Fonda's order to drop the knife and release the victim and the baby. For the next 15 hours, hostage negotiators tried unsuccessfully to get defendant to surrender. Noticing that defendant was growing increasingly more tired, the authorities formulated a plan to disarm him. When defendant fell asleep at approximately 4:00 A.M. on August 30, 1994, they administered a debilitating spray and apprehended him.

Defendant was charged in a 10-count indictment with kidnapping in the first degree (counts 1, 2 and 3), kidnapping in the second degree (counts 4 and 5), escape in the second degree (count 6), assault in the second degree (count 7), criminal possession of a weapon in the third degree (count 8) and

endangering the welfare of a child (counts 9 and 10). Following a jury trial, defendant was convicted of two counts of kidnapping in the first degree, kidnapping in the second degree, escape in the second degree, assault in the second degree, two counts of endangering the welfare of a child and unlawful imprisonment in the second degree, as a lesser included offense under counts 3 and 5. He was sentenced as a second felony offender to a prison term totaling 29 years to life. Defendant appeals.

Defendant contends that there was insufficient evidence to support his conviction for kidnapping in the first degree under the theory charged in the second count. That count alleged that he abducted the victim to "advance the commission of [the] felony" (Penal Law § 135.25 [2] [b]) of escape in the second degree (see, Penal Law § 205.10 [2]). Defendant argues that the crime of escape was completed when he left the training academy and, therefore, he did not advance its commission during the standoff at the apartment. Additionally, he argues that there is no evidence that he held the victim hostage to get away from the apartment. We find that the escape charged in the sixth count began when defendant left the training academy since he was effectively beyond DOCS' custody (see, Penal Law § 205.00 [2]; People v Mesa, 188 AD2d 688, lv denied 81 NY2d 844). Viewing the evidence in the light most favorable to the People (see, People v Contes, 60 NY2d 620, 621), we find a valid line of reasoning by which a jury could rationally conclude beyond a reasonable doubt (see, People v Bleakley, 69 NY2d 490, 495) (even in the absence of proof that defendant intended further flight from the premises) that the abduction of the victim served to evade custody by remaining beyond the control of DOCS' personnel for its duration (see, People v Sargent, 194 AD2d 865). Thus, the evidence was legally sufficient to establish that the abduction advanced the commission of the crime of escape in the second degree.

Next, defendant argues that the evidence was legally insufficient to support the conviction for kidnapping in the first degree under the first count and that the verdict was against the weight of the evidence. The first count charged defendant with abducting the victim and restraining her for more than 12 hours with intent to inflict physical injury (see, Penal Law § 135.25 [2] [a]). Defendant contends that the superficial wounds sustained by the victim were inflicted during a "domestic dispute" before the alleged abduction and, in any event, none constituted a "physical injury" defined as an "impairment of physical condition or substantial pain" (Penal Law § 10.00

[9]). Assuming, without deciding, that the victim did not suffer physical injury as that term is defined in the Penal Law, it was only incumbent upon the People to prove that defendant *intended* to inflict physical injury. In that regard, the record reveals that defendant repeatedly held the knife to the victim's neck and at one point indicated to Fonda that they would "all die as a family if need be". Again, viewing such circumstantial and direct evidence in the light most favorable to the People, we find that it could lead a rational trier of fact to conclude that the People established all the elements of kidnapping in the first degree beyond a reasonable doubt. Moreover, upon exercising our factual review power, we find that the verdict was not against the weight of the evidence (*see, People v Bleakley*, 69 NY2d 490, 495, *supra*).

Defendant also contends that the People's failure to turn over certain photographs, as well as various comments made by the prosecutor during voir dire and summation, deprived him of a fair trial. The subject photographs, depicting the building where the crimes occurred, were taken just prior to the commencement of the trial on June 26, 1995 but were not used during the People's case. A second series of photographs taken June 26, 1995 during the trial and used by the People were provided to the defense. Upon learning that the earlier photographs had not been disclosed, Supreme Court immediately directed their turnover and sanctioned the People $250 (*see*, CPL 240.70 [1]). Defense counsel requested and was granted an adequate opportunity to examine the photographs before proceeding. We note that no request was made to reopen the cross-examination of any of the prosecution's witnesses. We further note that the defense failed to support its mistrial motion with a showing of prejudice arising from the prosecution's delay in providing the photographs. In our view, the court's action effectively eliminated prejudice to defendant (*see, People v Martinez*, 71 NY2d 937, 940; *People v Kelly*, 62 NY2d 516; *People v Robinson*, 205 AD2d 836, 837, *lv denied* 84 NY2d 831).

Furthermore, the prosecutor's comments during summation characterizing defendant's conduct as a "roller coaster crime wave" and stating that his story was "concocted" were, upon review of the entire summation, a fair response to defendant's arguments and the evidence presented (*see, People v Ashwal*, 39 NY2d 105, 109). In any event, substantial prejudice was not established (*see, People v Geddes*, 258 AD2d 679, 681). We also find unavailing defendant's argument that certain comments made by the prosecutor during voir dire regarding the strength of the People's case and the number of prosecution witnesses

deprived him of a fair trial. Supreme Court's prompt instructions advising the jury to ignore the remarks and emphasizing in the preliminary charge that statements, arguments and questions by lawyers are not evidence were sufficient to prevent prejudice (*see, People v Ashwal, supra*, at 111; *People v Davis*, 208 AD2d 1062, 1063, *lv denied* 84 NY2d 1010).

Defendant further argues that juror misconduct deprived him of a fair trial. At the beginning of the second day of trial, Supreme Court asked whether any of the jurors had read an article about the case in the local morning newspaper and it appears from the record that the court received a negative response. Later that day, however, two jurors reported that they had seen one of the alternate jurors[1] reading the newspaper account that morning and heard her make a comment about defendant's age. The record reveals that the court questioned all of the jurors and determined that five heard the remark. We note that defendant's age (22) was already contained in one of the People's exhibits received in evidence. Given these circumstances and the jurors' assurances of impartiality, neither the existence of the article nor knowledge of defendant's age prejudiced the jurors' ability to render a fair and impartial verdict (*see, People v Testa*, 61 NY2d 1008, 1009). Accordingly, Supreme Court did not abuse its discretion in denying defendant's various motions for a mistrial premised upon deprivation of a fair trial.

Finally, we address defendant's contention that his sentence was harsh and excessive. We note that at the time of the commission of the instant crimes defendant had convictions for three prior unrelated drug felonies and two separate parole revocations. Given the nature of the instant crimes and defendant's criminal history, we cannot say that Supreme Court abused its discretion when it sentenced him to the harshest statutorily permissible aggregate prison term of 29 years to life. Here, appellate counsel argues, *inter alia*, lack of proportionality of the punishment exacted to those imposed in other kidnapping cases, a criterion which we may consider regarding the severity of the sentence[2] (*see, People v Friedman*, 176 AD2d 124).

Where warranted in the interest of justice, this Court may

---

1. Supreme Court subsequently dismissed this juror.

2. It should be noted that defendant does not allege that the punishment imposed was grossly disproportionate to the crime, the criterion for determining whether a sentence is violative of the Cruel and Unusual Punishment Clauses (*see*, NY Const, art I, § 5; US Const 8th Amend; *People v Broadie*, 37 NY2d 100, *cert denied* 423 US 950).

exercise its plenary power to modify a sentence (*see*, CPL 470.15 [6] [b]; *People v Delgado*, 80 NY2d 780; *People v Hearn*, 248 AD2d 889). Taking into consideration the particular circumstances herein, including defendant's age and the absence of aggravating factors typically present in the conventional kidnapping scenario, i.e., asportation, ransom demands and/or substantial harm to the victim, we exercise our discretion in the interest of justice and modify defendant's sentence by reducing the minimum terms imposed upon the two convictions for kidnapping in the first degree to 20 years. We direct that the sentences imposed upon the convictions for unlawful imprisonment in the first degree and escape in the second degree run concurrently with the sentences imposed upon the convictions for kidnapping in the first degree and kidnapping in the second degree, for a total aggregate sentence of not less than 20 years nor more than the remaining term of defendant's natural life.

We have considered defendant's remaining contentions and find that they are either unpreserved for our review or lack merit.

Mikoll, Yesawich Jr., Spain and Graffeo, JJ., concur. Ordered that the judgment is modified, as a matter of discretion in the interest of justice, by reducing the minimum terms imposed upon the convictions for kidnapping in the first degree under counts one and two of the indictment to 20 years and by directing that the sentences imposed upon the convictions for unlawful imprisonment in the first degree and escape in the second degree run concurrently with the sentences imposed upon the convictions for kidnapping in the first degree and kidnapping in the second degree, and, as so modified, affirmed.