■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MALIK EDWARDS, Appellant. [771 NYS2d 145]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Dowling, J.), rendered October 24, 2000, convicting him of attempted murder in the second degree and criminal possession of a weapon in the fourth degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The Supreme Court providently exercised its discretion in denying the defendant's request for a continuance in order to permit him to present the testimony of a witness, since the defendant did not show that the proposed witness would present testimony material to the case (*see People v Singleton,* 41 NY2d 402 [1977]; *People v Foy,* 32 NY2d 473, 476 [1973]; *People v Drummond,* 233 AD2d 339 [1996]). The defendant wanted to secure the testimony of a Sergeant Quinn who, according to the testimony of Police Officer Johnson, was probably the officer who inspected the crime scene and noted that no blood was observed on the subway platform where the stabbing occurred. This testimony allegedly would raise doubts about the victim's credibility with respect to where the stabbing occurred. However, there is nothing in the record to support the premise that there should have been noticeable amounts of blood on the subway platform under the circumstances, as the victim was wearing a down jacket and a sweater that could have absorbed much of the blood. Further, the victim testified that right after he was stabbed the defendant pushed him off the platform and onto the tracks. In addition, the 911 call made to the police reporting a stabbing originated from a point just outside the station entrance, providing corroboration for the victim's testimony that the attack occurred in the subway station.

The defendant testified in his own behalf. The gist of his testimony was that he was elsewhere at the time the crime was committed, entitling him to an alibi charge (*see People v Holt,* 67 NY2d 819, 821 [1986]). The trial court's refusal to give such

an instruction, however, does not require reversal where the charge as a whole conveyed the necessary information regarding the People's burden of proof (*see People v Warren,* 76 NY2d 773, 775-776 [1990]; *People v McFarlane,* 187 AD2d 734 [1992]). The charge given here left no doubt that the People had the burden of proving, beyond a reasonable doubt, both that the defendant stabbed the victim at the crime scene and that he was not elsewhere at the same time (*see People v Warren, supra* at 775). In this case, if the jury found, beyond a reasonable doubt, that the defendant was at the crime scene and stabbed the victim there, as the victim testified, it had to have rejected the defendant's alibi (*see People v Hayes,* 191 AD2d 368, 370 [1993]).

The defendant's arguments regarding alleged prosecutorial misconduct during summation are unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Dien,* 77 NY2d 885 [1991]; *People v Nuccie,* 57 NY2d 818 [1982]). In any event, the comments alleged to be inflammatory and prejudicial constituted either fair comment on the evidence (*see People v Ashwal,* 39 NY2d 105 [1976]) or were responsive to arguments presented in the defense counsel's summation (*see People v Galloway,* 54 NY2d 396 [1981]).

The sentence imposed was not excessive (*see People v Suitte,* 90 AD2d 80 [1982]).

The defendant's remaining contentions, including those raised in his supplemental pro se brief, are without merit. Adams, Townes and Mastro, JJ., concur.

Goldstein, J.P., dissents and votes to reverse the judgment appealed from, on the law, and to order a new trial, with the following memorandum: In my view, the defendant was deprived of a fair trial.

The sole evidence of the defendant's guilt was the testimony of the complaining witness, who acknowledged at the trial that he knew the defendant for many years and his relationship with the defendant soured after his brother and the defendant's brother "had a little incident."

According to the complainant, on January 1, 2000, he entered the northbound platform of the Van Siclen Avenue subway station sometime after 11:00 P.M. and saw two of the defendant's friends standing by a telephone booth. The complainant testified that he then saw the defendant walking toward him and after he and the defendant greeted each other, the defendant said "this is what's up, bitch," grabbed the complainant, stabbed him and pushed him onto the subway tracks.

The complainant stated that he crossed the subway tracks

over to the southbound platform while the defendant ran "upstairs" and also crossed over to the southbound platform. The complainant crossed back over to the northbound side and the defendant followed. The complainant then returned to the southbound platform and saw the defendant leave the scene in a northbound train.

The complainant testified that once the defendant left the station, he went upstairs and "screamed" the word "Hello" at the token booth clerk, but she was asleep and did not respond. The token booth clerk testified that she arrived at the token booth at 10:00 P.M. on January 1, 2000 and remained until 7:00 A.M. the next day. She did not see the defendant or the complainant. She testified that if, as the complainant had testified, the defendant had crossed from the northbound to the southbound platform and back using the mezzanine, he would have passed her token booth. After 11:00 P.M. police officers asked her if anything happened in the station and she told them "No."

The complainant testified that after he exited the subway station he asked a man on the street to call the police. After the police were called, the complainant called his mother and sister on the man's telephone. His mother and sister who lived two blocks away from the subway station arrived before the police and drove him to Brookdale Hospital. Neither the man on the street who provided the telephone nor the defendant's mother or sister testified at the trial.

It is undisputed that the complainant suffered serious injuries. He walked into the emergency room of Brookdale Hospital with his jacket soaked with blood. The question remains as to who inflicted the injuries.

Police Officer Johnson filled out a complaint report with respect to the crime on January 2, 2000, at 1:00 A.M. The report stated that the complainant's mother identified his assailant as the defendant. The report further stated that the token booth clerk on duty at the time of the crime "has no knowledge of [a] stabbing occurrence in station" and there were "no signs of blood at station from visual insp. of platform."

About 24 hours later, Police Detective Delahunt examined the Van Siclen Avenue subway station and observed what appeared to him to be a spot of blood on the northbound platform. He took a photograph of the northbound platform which was admitted in evidence at the trial without objection as fairly and accurately depicting the northbound platform 24 hours after the crime occurred. No sample was submitted for laboratory analysis. Although Detective Delahunt testified that the red spot in the photograph appeared to him to be blood there was no evi-

dence that the spot was in fact blood. Assuming arguendo that it was blood, there was no evidence that it constituted the complainant's blood or even human blood.

At the trial, Officer Johnson acknowledged that she was never at the scene of the crime, had no personal knowledge of whether blood was present at the scene of the crime, and "Sergeant Quinn must have" provided her with the information in her report that no blood was found at the scene. At that juncture, the defense counsel stated "I need to ask for the testimony of Sergeant Quinn who was apparently, according to this witness at the crime scene and inspected the crime scene and saw no blood." The prosecutor responded that she "anticipated" the defendant's request after "having spoken with Officer Johnson today" and ascertained that Sergeant Quinn "works midnights and he won't be in until then." It is apparent from the record that neither the People nor the defense counsel were aware that Sergeant Quinn's observations were included in the complaint report until after they questioned Officer Johnson during the course of the trial. Nevertheless, the trial court denied the defendant's request for a brief adjournment to produce Sergeant Quinn on the ground that the complaint report was in the defense counsel's possession and calling Sergeant Quinn as a witness would delay the trial.

Thereafter, the defendant testified that he was in Manhattan on January 1, 2000 and was at a dancing club known as "Club Speed" at approximately 11:00 P.M.

At the conclusion of the defendant's testimony, the trial court adjourned the case to the following day. The prosecutor and the defense counsel were advised that proceedings on the following day would commence at 9:30 A.M. with a precharge conference to be followed by summations and the charge: no further witnesses would be permitted.

At the precharge conference, the defense counsel noted that he had submitted an alibi notice earlier in the case and requested an alibi instruction. The trial court denied the request for an alibi instruction on the ground that the defendant himself was the only alibi witness.

At the conclusion of the jury instructions, the defense counsel reiterated the request for an alibi charge. The trial court again denied the defense counsel's request.

During the course of deliberations, the jury requested supplemental instructions on reasonable doubt. The defense counsel reiterated the request for an alibi instruction which was again denied.

The law is well settled that where the defendant takes the

stand in his own behalf and "the gist of the defendant's testimony was that he was elsewhere" he is entitled to an alibi instruction (*People v Holt,* 67 NY2d 819, 821 [1986]; *see People v Warren,* 76 NY2d 773 [1990]). Those instructions include the admonition that it is the "People's burden of disproving [the] defendant's alibi" beyond a reasonable doubt (*People v Warren, supra* at 775).

The People concede on appeal that an alibi instruction should have been given. However, they contend that the failure to give the alibi instruction does not require reversal since the charge as a whole conveyed the necessary information regarding the People's burden of proof. Both the Court of Appeals and this Court have held that where the evidence of the defendant's guilt is overwhelming and the alibi evidence is weak, the trial court's refusal to give an alibi instruction, although error, does not require reversal if "the charge as a whole conveyed the necessary information regarding the People's burden of proof" (*People v Warren, supra* at 775; *see People v McFarlane,* 187 AD2d 734 [1992]; *see also People v Merritt,* 265 AD2d 733, 734 [1999]; *People v Washington,* 151 AD2d 794 [1989]).

However, in the instant case, the sole evidence of the defendant's guilt was the complainant's testimony. The defendant's prior relationship with the complainant and the fact that there was a "prior incident" between the complainant's brother and the defendant's brother may have induced the complainant to falsely implicate the defendant as the perpetrator of his injuries. *People v Hayes* (191 AD2d 368 [1993]), relied upon by the majority is distinguishable, since in that case the defense counsel did not request an alibi instruction, while in the instant case that instruction was repeatedly requested and repeatedly denied.

Further error was committed in denying the defendant's request for a brief continuance to produce Sergeant Quinn as a witness in his behalf. Requests for brief continuances should be granted where the testimony of the witness is material, the party who seeks the continuance is not guilty of neglect, and the witness can be produced at the time to which the trial is deferred (*see People v Foy,* 32 NY2d 473, 476 [1973]). In the instant case, all of these criteria were met (*see People v Venable,* 154 AD2d 722, 723 [1989]).

The issue in this case was whether the complainant's testimony that the defendant committed the crime was to be believed. The token booth clerk's testimony was contrary to the complainant's testimony and it is undisputed that the police were called from the street in the vicinity of the subway station and not from the subway station itself.

Although the majority asserts that it is not material whether or not blood was found in the subway station, the People made this a main issue in their case. In summation, the prosecutor argued that "blood" in the photograph taken 24 hours after the incident constituted corroboration of the complainant's testimony. The prosecutor further argued that Officer Johnson's report that there was no blood at the scene was based upon her assumption that "someone else went to the scene" and did not see blood. The defense counsel's objection to the prosecutor's statement that Officer Johnson "assume[d]" someone else went to the scene was overruled. Sergeant Quinn's testimony that he saw no blood at the scene shortly after the crime would have been highly material to refute the People's evidence (*see People v Calderon,* 185 AD2d 853 [1992]).

There is no evidence of lack of diligence on the part of the defense counsel who realized at the same time as the prosecutor that the information contained in Officer Johnson's complaint report constituted hearsay provided by Sergeant Quinn (*see People v Venable, supra*). The prosecutor, anticipating the defense counsel's request, ascertained that Sergeant Quinn was still employed by the police department and was scheduled to appear for work at midnight. Accordingly, Sergeant Quinn was available to appear on short notice.

The trial court refused "for its own convenience, to grant even the briefest of adjournments" (*People v Singleton,* 41 NY2d 402, 406 [1977]), depriving the jury of hearing testimony crucial to its findings of fact. Under the circumstances, the denial of a continuance was an abuse of discretion (*see People v Foy, supra*).

These errors deprived the defendant of an opportunity to present a coherent defense to the People's arguments that the jury should look for whether "there is any corroboration," that the complainant's testimony was "corroborated" by blood in the subway station and that the defendant's alibi testimony did "not make sense."

In view of the foregoing, the judgment appealed from should be reversed and a new trial ordered.