■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. GEORGE GREENRIDGE, Appellant.— Appeal from a judgment of the County Court of Ulster County, rendered May 8, 1974, upon a verdict convicting defendant of the crime of robbery in the second degree. On February 8, 1973, Smith's Market, a family-owned grocery store in Kingston, New York, was held up by a shotgun-wielding robber. John Smith, part-owner of the store, was alone in the premises when a man, described by him as being about six feet tall and dressed in a blue overcoat, entered. When Smith, who was behind a three- and a half-foot counter restocking the cigarette rack, turned around, he noticed the man holding a double-barreled shotgun in his right hand. Smith was between two and five feet away from the robber and noticed that the bluing on the gun barrel was old and that the unmasked stranger had a small moustache. The store was well lighted and he had opportunity to observe the robber face-to-face for about two minutes at close range. At the robber's demand, Smith emptied the cash register of its contents, later determined to be approximately $150 and about $10 worth of food stamps, which the intruder stuffed into his coat pocket. After he fled, Smith called the police and later went to the police station and made a statement. Defendant was arrested the next day and was subsequently indicted on a charge of robbery in the first degree. Apparently, neither the gun, nor the overcoat nor proceeds of the robbery were recovered. At trial, Smith identified defendant as the robber and stated that his moustache had changed in appearance since the robbery. A photograph of the defendant, taken upon his arrest the day after the crime, was introduced into evidence after Smith testified that it was a fair and accurate representation of Greenidge as he appeared on the night of the robbery. There was no objection to the admission of the photograph into evidence; the only related objection being to the admission of notations on the back of said photograph which were masked at defense counsel's request. Upon the close of the People's case, defendant made an unsuccessful motion to dismiss the charges and then rested his case without calling any witnesses. In the course of its deliberations, the jury requested additional instructions. When the court convened, defendant was nowhere to be found. Defendant's attorney stated in the record that defendant had been told by him by the court clerk not to go further than a luncheonette near the courthouse; however, the defendant, believing it would be a long time before the jury rendered its verdict, had decided to take a drive. Defendant's attorney thereupon waived his right to be present during the supplementary charge to the jury. The additional charge to the jury was given without exception and shortly thereafter the jury returned its verdict, once again in the absence of the defendant. Defendant's whereabouts at these times are not detailed in the record. The People's brief, however, states without contradiction that defendant had absconded from the jurisdiction and was apprehended five months later in Key West, Florida. He was then sentenced

to an indeterminate term of imprisonment with a maximum of eight years. Defendant argues that the trial court erred in permitting the trial to continue in his absence; that use of photo identification procedures at the investigation stage in the absence of counsel and without a lineup violated his constitutional rights under the Sixth and Fourteenth Amendments to the Constitution; that the introduction of a "mug shot" into evidence was reversible error; and, finally, that the charge should have been dismissed at the close of the People's case. The generic defect that affects the first three contentions is the failure to preserve the right to urge such grounds for reversal by appropriate objection at or before the trial (see CPL 710.20; 710.70, subd. 3). While a defendant in a criminal proceeding possesses a personal right to be present during every step of the proceeding, that right is not absolute and may be waived (*Diaz* v. *United States*, 223 U. S. 442; *People* v. *La Barbera*, 274 N. Y. 339; see, generally, 94 ALR 2d 270). Here, the defendant, despite admonitions from his counsel and the court clerk to keep himself available, deliberately absented himself while the jury deliberations were in progress and remained unavailable when the verdict was returned. He now seeks to take advantage of his own willful behavior and use it as a shield against prosecution for the crime. As the United States Supreme Court stated in *Diaz* v. *United States* (*supra*, p. 457): " 'It does not seem to us to be consonant with the dictates of common sense that an accused person, being at large upon bail, should be at liberty, whenever he pleased, to withdraw himself from the courts of his country and to break up a trial already commenced. The practical result of such a proposition, if allowed to be the law, would be to prevent any trial whatever until the accused person himself should be pleased to permit it. * * * This would be a travesty of justice which could not be tolerated' ". We therefore hold that, by his conduct, and irrespective of the actions of his attorney, defendant waived his right to be present during the supplementary instructions and at the rendition of the verdict. (See *People* v. *Colon*, 66 Misc 2d 956; *People* v. *Welsh*, 42 Misc 2d 296; cf. *People* v. *Colascione*, 22 N Y 2d 65, 69–71; see, generally, 21 ALR Fed. 906.) With respect to defendant's claim that the "mug shot" was improperly admitted into evidence, aside from his failure to preserve the point for review by appropriate objection as noted earlier, no error was committed where the purpose of the photograph was to establish his appearance shortly after the crime, which occurred about eight months prior to trial (see *People* v. *Logan*, 25 N Y 2d 184, 189, 195–196). Defendant's remaining arguments are plainly without merit. Judgment affirmed. Staley, Jr., J. P., Cooke, Sweeney, Main and Reynolds, JJ., concur.