OPINION OF THE COURT
Irving Lang, J.
The unique question posed by this motion to vacate a judgment of conviction is whether a claim of immunity can be successfully raised after the conviction has been affirmed on appeal.
Defendant Phillips, a star witness at the public hearings of the Knapp Commission on police corruption, was convicted by jury verdict of two counts of murder and one count of attempted murder. A previous trial ended in a hung jury.
A motion to set aside the verdict was made and denied by Justice Birns. The convictions were unanimously affirmed by the Appellate Division (52 AD2d 758) and leave to appeal to the Court of Appeals was denied by Chief Judge Breitel in May of 1976 (39 NY2d 949).
The essence of the defendant’s motion revolves around an alleged grant of immunity to Mr. Phillips by the United States Attorney for the Southern District of New York. This grant of immunity was supposedly in return for Phillips’ cooperation with and testimony before the Knapp Commission.
Assuming for purposes of this motion that such immunity *667 was granted (a large assumption in light of the meager evidence submitted to support the claim), the defendant makes a two-pronged attack on his conviction. First, he claims that the entire prosecution is barred since it is the product of his Knapp Commission testimony (transactional immunity). Secondly, he maintains that the prosecution improperly used evidence obtained as a result of Phillips’ co-operation with the Knapp Commission which was covered by his immunity agreement (use immunity).
The defendant claims that he was unaware that he had immunity during his second trial (the first having resulted in a mistrial). In fact, the defendant asserts that he had been informed by members of the United States Attorney’s office that he had no such immunity. This assertion is difficult to square with the statement in the defendant’s affidavit in support of the motion that he actively sought immunity from Michael Armstrong, counsel to the Knapp Commission, and received an assurance that it would be granted. This statement is corroborated by Mr. Armstrong. (Interestingly, there is no supporting affidavit from the alleged grantor of immunity, Whitney North Seymour, Jr., then United States Attorney for the Southern District of New York.) Thus, long prior to his indictment, the defendant was aware that he had, at least, a colorable claim of immunity. Despite this knowledge, through the entire course of the two trials in this case, while the defendant was represented by two different and experienced defense attorneys, the issue of immunity was never raised.
It is also clear that the United States Attorney did not have the power to grant defendant immunity from State prosecution. The Federal immunity statute in effect during the time of the supposed agreements between Mr. Armstrong and Mr. Seymour permitted a United States Attorney to grant only use or testimonial immunity, not transactional immunity (US Code, tit 18, §§ 6002, 6003). Nor is anything more required by the United States Constitution (Kastigar v United States, 406 US 441). And while a grant of immunity by Federal authorities is binding upon the States, the latter cannot be bound to give any greater degree of immunities than the Federal authorities themselves can give (see Murphy v Waterfront Comm., 378 US 52).
But whether the claim is of testimonial or transactional immunity, it must be timely made.
*668 Immunity is an enumerated ground for dismissal of an indictment (CPL 210.20, subd 1, par [d]) but such a motion must be made prior to the commencement of trial (CPL 210.20, subd 2); and if the issue is not timely raised, the motion may be denied summarily (CPL 210.20, subd 2).* A fortiori, a defendant cannot wait until four years after conviction to raise an issue which could have been raised at the very outset of the prosecution.
A motion to suppress testimony on the ground that the defendant had use immunity might have been made at the time of trial. The defense never made such a motion.
Timeliness in attack on indictments or suppression of evidence is essential to the orderly administration of justice.
While this court has found no cases related to belated claims of immunity, there are numbers of decisions holding that the failure to assert constitutional privileges and rights in a timely fashion precludes subsequent challenges. There is no sound reason or policy why a belated claim of immunity should be treated differently than other claims which have been uniformly rejected as untimely (People v Kenneally, 50 AD2d 949; People v Blim, 61 AD2d 876, self incrimination; People v Smith, 41 AD2d 893, claim of illegally seized evidence; People v Greenridge, 46 AD2d 947, claim of improper identification; People v Consolazio, 40 NY2d 446, objection to jury panel; CPL 270.10, subd 2; see, also, People v Friola, 11 NY2d 157; People v West, 12 NY2d 1090; People v Huntley, 15 NY2d 72).
In any event, with regard to the tape recording which the defendant claims was used illegally by the prosecution, the court notes that it was used to impeach the defendant’s testimony when he took the stand and was identified by the defendant as being his voice. Such evidence, even if it was obtained by the prosecution through unconstitutional means, is admissible for impeachment purposes, on the theory that constitutional rights should not be used to protect a defendant from the consequences of blatant perjury (Walder v United States, 347 US 62; Harris v New York, 401 US 222).
In sum, the defendant’s claim of transactional immunity is rejected as untimely and untenable. The defendant’s claim of *669 testimonial immunity is rejected as both untimely and the proper subject of use in the circumstances of this case.
The court has reviewed the remaining grounds asserted by the defendant and finds them without merit.
For all the foregoing reasons the motion is denied in all respects.

 Even for good cause shown, such motion can be entertained "in the interest of justice * * * on the merits at any time before sentence.” (CPL 210.20, subd 2; emphasis supplied.)