■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRUCE BLACK, Appellant.—Judgment of the Supreme Court, New York County (Clifford A. Scott, J.), rendered December 15, 1983, convicting defendant, after a jury trial, of attempted robbery in the first degree and criminal possession of a weapon in the third degree and sentencing him to concurrent terms of 7½ years to 15 years and 3½ years to 7 years, is reversed, on the law, and the matter remanded for a new trial.

At approximately 11:30 P.M. on June 1, 1983, Rhadames Jimenez was at the rear of a Merit gas station examining the

ignition cables of his taxi. The lighting was dim. He heard a noise and turned around to see a man with a knife who demanded Mr. Jiminez's money. Mr. Jimenez ran to the trunk of the car and removed a jack, which he brandished at his assailant. The assailant folded his knife, put it in his pocket and walked away. Mr. Jimenez followed the man in his taxi. Upon seeing a police patrol car, Mr. Jimenez flashed his lights to signal the officers. Although knowing very little English, Mr. Jimenez managed to inform the officers that a man had tried to rob him. Mr. Jimenez had by then lost sight of the perpetrator. He and the police returned to the gas station, however, where Mr. Jimenez saw defendant, whom he identified as the perpetrator. Defendant was arrested, and a folding knife was recovered from his right rear pants' pocket.

At trial, the complainant had no trouble identifying defendant as the perpetrator and never indicated that defendant's appearance had somehow changed since the time of his arrest. According to one of the arresting officers, defendant was only "much cleaner in appearance than he was at the time of his arrest." Over defense counsel's vehement objections, the Assistant District Attorney succeeded in introducing into evidence defendant's arrest photographs. The Assistant District Attorney argued to the court that because the complainant was somewhat "slovenly" in appearance, he wanted the jury "to know the defendant at the time of the crime wasn't necessarily prim and proper either and it makes it more likely that a man could commit such a crime." During summation the Assistant District Attorney referred to defendant's photographs, stating that defendant "was not so prim and proper as he is now."

The prosecutor's stated reason for admitting the photographs into evidence amounts to nothing more than a naked admission that the photographs were being offered for the patently impermissible purpose of arguing that a dirty, disheveled person has a high propensity for committing a crime. Courts have repeatedly held that evidence offered solely to show a propensity to commit the crime charged is inadmissible. (See, People v Allweiss, 48 NY2d 40, 46; People v Fiore, 34 NY2d 81, 84; People v Brooks, 83 AD2d 808.) Inasmuch as the complainant and the arresting officer had no trouble identifying defendant in court, there was no legitimate need for the prosecutor to offer into evidence defendant's arrest photographs. Inapposite are those cases where the defendant's physical appearance had changed since the date of his arrest. In those cases arrest photographs were introduced to show

that the defendant's appearance had changed and that at the time of his arrest his appearance matched the description of the perpetrator. *(See, People v Griffin,* 29 NY2d 91, 93; *People v Logan,* 25 NY2d 184, 190, 195; *People v Laguer,* 58 AD2d 610; *People v Greenridge,* 46 AD2d 947, 948.)* Here, the evidence served no purpose other than to place defendant in a bad light. The admission of the photographs was prejudicial and denied defendant a fair trial. Accordingly, a reversal is required. Concur—Carro, Fein, Milonas and Rosenberger, JJ.

Sandler, J. P., dissents in a memorandum as follows: I agree that it was improper to admit the defendant's arrest photographs on the ground that the District Attorney, concerned that the defendant's apparently impeccable attire during the trial contrasted favorably with the complaining witness' "slovenly" appearance, wanted "the jury to know the defendant at the time of the crime wasn't necessarily prim and proper either and it makes it more likely that a man could commit such a crime."

My difficulty with the court memorandum is that the arrest photographs do not in fact disclose that the defendant was "dirty" or "disheveled", even if I could accept the doubtful hypothesis that such an appearance could realistically have led to the improper inference of a propensity to commit the crime charged. I find nothing in the appearance or attire of the defendant depicted in the arrest photographs that could possibly have led the jury to infer a propensity to commit the charged crime, or that would in any way have prejudicially affected the outcome of the trial. The inescapable reality is that the defendant was convicted because the jury quite sensibly found reliable his identification by a complaining witness who had kept him in view, with only a few seconds' interruption, from the time the crime occurred until the defendant was arrested, and was in no way contributed to by any aspect of the defendant's appearance as portrayed in the photographs.

At the risk of complicating the relatively simple issue of prejudice that divides me from the court, I should add my view that the photographs would have been properly admissible in evidence for a reason not stated by the trial assistant. Realistically, the single issue presented was the reliability of the defendant's identification by a complaining witness who had kept him in view from the time of the crime, with only a few seconds' interruption, until his arrest. Among the various factors appropriately considered by a jury in evaluating the reliability of the identification, it was surely pertinent for the

jury to consider whether the defendant's appearance was that of someone who could easily be mistaken for another. The photographs disclose the defendant attired in a light sport jacket, a white and black sport shirt, dark, apparently blue, slacks, and what appears to be blue suede shoes. Taken together with his facial features, which the jury could observe in the courtroom during the course of the trial, I believe that the distinctive nature of the defendant's attire, although in no way suggestive of a propensity to commit a crime, could properly have been considered by the jury in evaluating the possibility that there had been an erroneous identification.

By any realistic standard, the defendant's guilt was established by overwhelming evidence, and the introduction of the arrest photographs for the erroneous reason given presented no "significant probability * * * that the jury would have acquitted the defendant had it not been for the error * * * which occurred." *(People v Crimmins,* 36 NY2d 230, 242.)