This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 29
The People &c.,
          Respondent,
        v.
Trevor Anderson,
          Appellant.

A. Alexander Donn, for appellant.
Terrence F. Heller, for respondent.

ABDUS-SALAAM, J.:

Defendant Trevor Anderson was convicted, upon a jury verdict, of attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]) and criminal possession of a weapon in the second degree (Penal Law § 295.03 [1][b]). Defendant argues that he was deprived of a fair trial by the prosecutor's use of

- 1 -

PowerPoint slides during summation, and that defense counsel was ineffective for failing to object to the use of the slides. Defense counsel, who objected to one of the PowerPoint slides, was not ineffective for failing to challenge the others, as the vast majority were not objectionable.

I.

According to the People's proof at trial, on March 14, 2010, on a Brooklyn street, defendant approached Erick Brown-Gordon, who was dating defendant's ex-girlfriend Diana Perez, and shot him twice in the abdomen. When Brown-Gordon turned around and tried to flee, defendant shot him twice more, in the back. Defense counsel argued at trial that Perez and Brown-Gordon were not credible witnesses and had falsely identified defendant.

The Appellate Division rejected defendant's challenges to his conviction and affirmed the judgment (130 AD3d 1055 [2d Dept 2015]). A Judge of this Court granted defendant leave to appeal (26 NY3d 1162 [2016]). We now affirm.

II.

In People v Ashwal (39 NY2d 106 [1976]), this Court explained that it is "fundamental" that counsel must stay within "the four corners of the evidence" during summation and that the prosecutor "may not refer to matters not in evidence or call upon the jury to draw conclusions which are not fairly inferable from the evidence" (id. at 109 [internal citations omitted]; see also CJI2d[NY] Pre-Summation Instructions ["summations provide each

lawyer an opportunity to review the evidence and submit for (the jury's) consideration the facts, inferences, and conclusions that they contend may properly be drawn from the evidence"]). The PowerPoint slides used by the People in this case were consistent with these principles. As we observed in People v Santiago (22 NY3d 740, 751 [2014]), PowerPoint "slides depicting an already admitted photograph, with captions accurately tracking prior [] testimony, might reasonably be regarded as relevant and fair [] commentary on the [] evidence, and not simply an appeal to the jury's emotions."

At bottom, a visual demonstration during summation is evaluated in the same manner as an oral statement. If an attorney can point to an exhibit in the courtroom and verbally make an argument, that exhibit and argument may also be displayed to the jury, so long as there is a clear delineation between argument and evidence, either on the face of the visual demonstration, in counsel's argument, or in the court's admonitions. We reject defendant's position that trial exhibits in a PowerPoint presentation may only be displayed to the jury in unaltered, pristine form, and that any written comment or argument superimposed on the slides is improper. Rather, PowerPoint slides may properly be used in summation where, as here, the added captions or markings are consistent with the trial evidence and the fair inferences to be drawn from that evidence. When the superimposed text is clearly not part of the

trial exhibits, and thus could not confuse the jury about what is an exhibit and what is argument or commentary, the added text is not objectionable.  The slides, in contrast to the exhibits, are not evidence.  The court properly instructed the jury that what the lawyers say during summations is not evidence, and that in finding the facts, the jury must consider only the evidence.  In this case, as was appropriate, the jury was told that the physical exhibits admitted into evidence would be made available to them, while the slides were not supplied to the jury during deliberations.

Given the paramaters of the permissible use of PowerPoint slides in summation, counsel was not ineffective for failing to object.  For example, some of the slides were pictures of exhibits with captions or numbers inserted to highlight the relevant portion of those exhibits.  Two slides showed a portion of the victim's medical records which included a diagram depicting the location of four wounds.  One slide showed the enlarged diagram, with superimposed text reading "Two Gun Shot Wounds to front" and "Two Gun Shot Wounds to back." That text accurately reflected the information in the exhibit.  Another slide showed the same diagram, with numerals on each of the respective markings representing the four wounds.  Defendant asserts that the People improperly altered the medical records to reflect their theory that the victim was shot four times, where the records purportedly show that he was shot twice.  However,

the medical records are not clear as to whether Brown-Gordon was shot twice and sustained four wounds (i.e, one entrance and one exit wound per shot), or was shot three or four times. The text inserted by the People referred to wounds, not shots, and the prosecutor argued, consistent with Brown-Gordon's testimony, that he had been shot four times. These slides, and the oral argument by the prosecutor, were fair comment on the evidence and the reasonable inferences to be drawn from that evidence.

Defendant also argues that his counsel was ineffective for failing to object to slides that showed photographs, received into evidence, of the street on which the shooting had occurred. On two of those slides, the prosecutor had superimposed yellow circles around street lamps which witnesses had testified had sufficiently illuminated the street so that they were able to see defendant. On another slide, there was a superimposed circle around the location where a testifying police officer said he had found three shell casings. These added markings did not misrepresent the evidence.[1]

Additionally, we reject defendant's argument that defense counsel was ineffective for failing to object to the prosecutor's use of a slide that showed defendant's arrest photograph, which had been received in evidence, surrounded by a

---

[1] The slides that did not display the exhibits but summarized the evidence at trial were not objectionable, as they did not "call upon the jury to draw conclusions which are not fairly inferable from the evidence" (Ashwal, 39 NY2d at 109).

superimposed circle, with boxes containing text summarizing the

People's theory of the case.[2]  Defendant argues that this slide

improperly altered the trial evidence and that the text boxes

surrounded defendant's face as if he were a target.  In our view,

the added text accurately tracked the witnesses's testimony and

the fair inferences to be drawn from the evidence, and the

placement of the text boxes around defendant's face was "not

simply an appeal to the jury's emotions" (Santiago, 22 NY3d at

751).

Nonetheless, even accepting defendant's position that

this slide was objectionable, the display of this slide alone did

not deprive defendant of a fair trial.  Instead, as in Santiago,

"the objection to the PowerPoint presentation that defendant now

raises is not so 'clear-cut' or 'dispositive' an argument that

its omission amounted to ineffective assistance of counsel" (22

NY3d at 751).

Finally, to the extent that the court made a Sandoval

ruling, defendant's claim that the ruling was in error is

unpreserved (see People v Hawkins, 11 NY3d 484, 494 [2008]).

---

[2] The text in the boxes stated "3/14/10 - Armed himself with a loaded and operable illegal .45 cal handgun"; "Made a series of calls to Diana immediately before shooting"; "Lay in wait for Erick-Brown Gordon with .45 cal handgun"; "Fired .45 handgun twice from less than 8 feet away as Erick faced him"; "Fired .45 handgun twice more as Erick ran from deft"; "His bullets hit Erick twice in front and twice in back"; "Defendant grabbed Diana and fled scene"; and "3/24/10 - Erick identified deft as shooter in line-up."

Accordingly, the order of the Appellate Division should be affirmed.

People v Trevor Anderson

No. 29

RIVERA, J. (dissenting):

The prosecutor's use of digitally edited reproductions of exhibits to convey inferences and misinformation, as well as to project defendant's image as the "face of death," exceeded the bounds of proper summation. A prosecutor may not use altered copies of exhibits to suggest that the evidence unequivocally establishes disputed facts or to distract the jury by playing to emotion. That, however, is what happened here.

The PowerPoint presentation employed by the prosecutor during summation included a modified version of defendant's arrest photograph, with the picture of his head at the center of a symbolic target. This target was surrounded by eight boxes containing both facts of the case and the prosecutor's inferences and mischaracterizations of the evidence, all pointing directly at defendant's face. The reimagining of defendant's likeness -- through a powerful visual medium -- distracted the jury from the unaltered trial evidence and the relevant facts, and was accompanied by the prosecutor's verbal statements that appealed to passion, not reason.

The error was compounded by the prosecutor's showcase of edited medical exhibits in two additional slides. The slides of the victim's hospital records contained superimposed words and

numbers which, in the context of the presentation, misled the jury as to what the actual exhibits showed in order to suggest that certain disputed facts were conclusively established at trial, and to thereby bolster witness testimony.  These alterations were the equivalent of using unadmitted evidence.

The strategic use of technology to display visual images enhanced the prejudicial impact of the edited reproductions of these exhibits, and when combined with defense counsel's failure to object to the offensive PowerPoint slides, denied defendant a fair trial.  Even in the face of earnest efforts to make the distinction between admitted evidence and argument clear, overlaying evidence with embedded inferences presents issues that cannot be overcome through jury instruction. I would reverse and remit for a new trial.

I.

During summation, the prosecutor may marshal the evidence so as to persuade the jury of defendant's guilt beyond a reasonable doubt, based on the People's view of the facts (CJI2d[NY] Final Instruction--Pre-Summation Instructions; 6 Am Jur Trials 873; CPL 260.30[9]).  The prosecutor may

> "comment upon every pertinent matter of fact bearing upon the questions the jury have to decide. . . .  And although counsel is to be afforded the widest latitude by way of comment, denunciation or appeal in advocating [counsel's cause,] summation is not an unbridled debate in which the restraints imposed at trial are cast aside so that counsel may employ all the rhetorical devices at [counsel's] command.  There are certain

well-defined limits."
(People v Ashwal, 39 NY2d 105, 109 [1976] [internal quotation
marks and citations omitted]).  It is a fundamental tenet of our
legal system that the People's "interest . . . in a criminal
prosecution is not that it shall win a case, but that justice
shall be done" and thus while the prosecutor in summation "may
strike hard blows, [the prosecutor] is not at liberty to strike
foul ones" (Berger v United States, 295 US 78, 88 [1935]; People
v Jones, 44 NY2d 76, 80 [1978]).

        The cardinal rule is that a summation, whether by the
People or the defense, "must stay within the four corners of the
evidence and avoid irrelevant comments which have no bearing on
any legitimate issue in the case" (Ashwal, 39 NY2d at 109
[internal quotation marks and citation omitted]).  In adherence
to this rule, the prosecutor cannot misstate the evidence, or
advance misleading representations to encourage inferences of
guilt based on facts not in evidence (People v Wragg, 26 NY3d
403, 411-412 [2015]).  "Above all [the prosecutor] should not
seek to lead the jury away from the issues by drawing irrelevant
and inflammatory conclusions which have a decided tendency to
prejudice the jury against the defendant" (Ashwal, 39 NY2d at
110).

        These proscriptions apply to the prosecutor's use of
the original physical exhibit or a technologically-generated
reproduction in summation.  I do not accept the majority's rule

that "a visual demonstration during summation is evaluated in the same manner as an oral statement" (maj op at 3).  Such an approach ignores the impact of visual aids on the viewer and assumes that the medium and manner by which ideas are communicated has no independent effect on the way those ideas are deconstructed and understood.  It also ignores the enhanced effect of combining imagery with oral commentary.

## II.

Every person who relies on visual aids to communicate a message is likely cognizant of what the science bears out: the medium of delivery has the potential to powerfully influence the way the message is heard and retained (see Lucille A. Jewell, Through a Glass Darkly: Using Brain Science and Visual Rhetoric to Gain a Professional Perspective on Visual Advocacy, 19 S Cal Interdisc LJ 237, 293 [2010]).  Research shows that pictures are typically remembered better than words (see Mary Susan Weldon & Henry L. Roediger, III, Altering Retrieval Demands Reverses the Picture Superiority Effect, 15 Memory & Cognition 269, 269 [1987]).  Indeed, "with visual information, people believe what they see and will not step back and critically examine the conclusions they reach, unless they are explicitly motivated to do so.  Thus, the alacrity by which we process and make decisions based on visual information conflicts with a bedrock principle of our legal system -- that reasoned deliberation is necessary for a fair justice system" (Jewell, supra, at 293).  This can make the

use of images at trial particularly problematic when combined with language, as "annotating images with text . . . exacerbates the interpretive distortion of images" (Elizabeth G. Porter, Taking Images Seriously, 114 Colum L Rev 1687, 1755 [2014]). Particularly troubling in the legal context are recent studies showing "that photos that relate to, but do not provide any evidence for, a claim . . . can nudge people towards believing that the related claims are true, whether they are true or not" (Eryn Newman & Neal Feigenson, The Truthiness of Visual Evidence, 24 The Jury Expert, 5:1 [Nov 2013]; see also Eryn Newman et al., Nonprobative photographs (or words) inflate truthiness, 19 Psychonomic Bulletin & R 969, 973 [2012] [studies have suggested that "the mere presence of non-probative information such as photos might rapidly inflate the perceived truth of many types of true and false claims" and that this effect can last for up to two days]).[1]  Furthermore, "images are much more immediately and tightly linked with emotion than is text," so "while images offer a wealth of creative and effective communication tools for lawyers, the very elements that make them persuasive pose dangers to the integrity of the decisionmaking process" (Porter, supra,

---

[1] For a summary of much of this research and the case law, see Matthew S. Robertson, Note, Guilty As Photoshopped: An Examination of Recent Case Law and Scholarship Regarding the Use of Non-Probative Images in the Courtroom, 55 Washburn LJ 731, 732 (2016).

at 1755-1756).[2]

I have previously addressed how visual imagery can be particularly impactful in summation,

> "when 'any argument that drones on for 5 or 10 minutes on any one point, regardless of how effective its content is, will lose the jury' (Thomas A. Mauet, Trial Techniques 394 [8th ed 2010]). Visual aids are a welcome relief since '[b]y the end of the trial, jurors are looking for new and fresh ways of receiving evidence and arguments' (id.). The use of technology at the end of closing argument may be particularly powerful. As one commentator has noted, '[t]he right to the final word has a psychological impact that makes it a forensic prize' (Siegel, New York Practice § 397 at 692 [5th ed 2011])."

(People v Santiago, 22 NY3d 740, 754 [2014] [Rivera, J., dissenting]). The last side to comment and deploy a visual presentation of its view of the case therefore gains an edge in persuading the jury as it commences deliberations. In the end, if visual tools did not enhance the rhetorical impact of the spoken word or persuade the viewer of the logic of an advocate's reasoning, the prosecutor would not take the time to mark up photos of exhibits, embed those photos with text and images suggesting defendant's guilt, and present those images in a PowerPoint slide show, as was done here.

Given the potential that crafted visual demonstrations

---

[2] "Visual presentations may send subconscious messages to jurors, creating a significant risk that jurors reach verdicts based on emotionalism and leaps in logic rather than on the facts in evidence" (Janet L. Hoffman, Visual Advocacy: The Effective Use of Demonstrative Evidence at Trial, 30 Litigation Journal [Spring 2011] at 9).

have to influence the viewer differently and more memorably than the listener of words spoken without visual accompaniment, in order to "stay within the four corners of the evidence," a prosecutor may display an image of an altered exhibit if the edited version: is intended to assist the jury with its fact-finding function, as opposed to drawing the jury's attention away from the relevant issues through prejudicial rhetoric; expresses information that places the exhibit's relevance in context, such as how the exhibit relates to the question of defendant's guilt; accurately and precisely reflects the admitted testimony and documentary evidence, as in the case of superimposed text of a direct quote; or draws attention to some relevant aspect of the exhibit with, for example, arrows, circles, or underlines.  Such overlays do no more than represent and organize the evidence clearly and in a manner that the prosecutor believes will ultimately persuade the jury to convict.

By contrast, the prosecutor may not seek to influence the jury's deliberative process by taking an exhibit, copying or enlarging it, and then superimposing on the image inferences to be drawn from the evidence about defendant's guilt.  An image of an exhibit embedded with an inference enhances the risk that jurors will treat the inference as an undisputed fact, especially where the image is presented alongside reproductions of other exhibits that contain superimposed testimony.  In that way, the altered image elevates argument into fact.  Allowing such images

also increases the risk that unreasonable inferences will be adopted by the jury.  Similarly, the prejudicial impact of inferences that appeal to emotion rather than fact is amplified when combined with a visual image.  While a phrase mentioned once in passing may not leave an indelible mark or be sufficiently egregious on its own to sway the jury, the odds that an inflammatory remark will be noted, remembered, and revisited during the deliberative process increase when that remark is presented visually on an edited exhibit (Miriam Z. Mintzer & Joan Gay Snodgrass, The Picture Superiority Effect: Support for the Distinctiveness Model, 112 Am J Psychology 113, 113 [1999] [explaining that pictures are easier to remember than roughly equivalent denotational words]).

The majority's assertion that a jury knows the added text is not part of either the trial exhibits or evidence is unresponsive to the issues presented on this appeal (maj op at 4).  We are not asked to assume that a juror could not make this distinction, but rather to consider the prejudice associated with overcoming the visual cues.  Moreover, it is no answer to state that the jury only has access to the original exhibits and not the prosecutor's summation materials when the prosecutor has the last word and defense counsel cannot respond to the inferences in the exhibit (compare Siegel, supra, at § 397 ["Plaintiffs are comforted throughout their summations by the knowledge that the defendant will not get another chance to address this jury."]).

Of course, there is no assurance jurors will confirm their impression of the facts by referring back to the exhibits.

Rather than rely on the judge's instructions to "cure" the effect of any possible confluence of inference and fact, or to dispel confusion after the jury has been exposed to the edited exhibit image, it is simply easier -- and fairer -- to maintain the separation between exhibits and the prosecutor's inferences. As Justice Thurgood Marshall noted, "it is quite unrealistic to believe that instructions to disregard evidence that a jury might treat in a manner highly prejudicial to a defendant will often be followed" (Chaffin v Stynchcombe, 412 US 17, 41 [1973] [Marshall, J., dissenting]). Judge Learned Hand similarly expressed that under some circumstances a limiting instruction may be "a recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody's else [sic]" (Nash v United States, 54 F2d 1006, 1007 [2d Cir 1932]). As such, it is preferable to avoid the problem before it is necessary to cure it. This way the jury will not confuse fact with the prosecutor's inference or suggestion.

## III.

Defendant's arrest photo, taken ten days after the incident, was admitted into evidence despite no apparent relevance to the issues. The victim identified defendant, whom he had met on multiple occasions, as the assailant three separate times during the trial. During the testimony of a subsequent

witness, the People offered the photo into evidence as representative of defendant's appearance on the day of the line up -- a matter not in dispute.  After defense counsel objected on relevance grounds the judge admitted the photo, stating "if that's the only problem or objection, I will receive it, and the jury will find it helpful, or perhaps not."

While "[a]n arrest photograph may be admitted into evidence in order to establish that a defendant's appearance was different at the time of the commission of the crime than at trial" (People v Ahmr, 22 AD3d 593, 594 [2d Dept 2005]), to show defendant's appearance on the date of the crime (People v Santana, 162 AD2d 191, 192 [1st Dept 1990]), or for other identification issues (see People v Richards, 220 AD2d 268, 269 [1st Dept 1995]), when "the complainant and the arresting officer had no trouble identifying defendant in court, there [i]s no legitimate need for the prosecutor to offer into evidence defendant's arrest photographs" (People v Black, 117 AD2d 512, 513 [1st Dept 1986]; see also State v Lazo, 209 NJ 9, 19 [2012] ["(I)f identification is an issue and the State's use of a mug shot is reasonably related to that issue, an arrest photo may be admitted only if it is presented in as neutral a form as possible."]).  While the prejudice to the defense from the admission of an arrest photo is most often related to its implication that the defendant has a criminal record (see e.g. United States v Harrington, 490 F2d 487, 490 [2d Cir 1973]),

there is an additional source of potential prejudice, as when the photo is unrelated to identification testimony and serves only to show defendant in a negative light (see Paul Lashmar, How to Humiliate and Shame: A Reporter's Guide to the Power of the Mugshot, Social Semiotics, 24(1), 56-87 [2014] [examining the history and cultural significance of mugshots]).

In defendant's case, the prosecutor relied on the exhibit twice in summation and not to argue a disputed question of identification, but for impassioned rhetorical emphasis. An unedited slide of the exhibit opened the prosecution's PowerPoint presentation, over which the prosecutor remarked, "[t]hat's the face of the man that [the victim] told you he saw right before the defendant shot him." The prosecutor ended his summation with a highly edited version of the exhibit, one that placed defendant's head in what appears to be a target. The composition of the arrest photo, overlaid with an orange circle and text boxes with arrows pointing at defendant's face, containing snippets of testimony and the prosecutor's inferences, is clearly designed to manipulate the jury's reasoned deliberation by appealing to their emotions and prejudices.

This imagery is reminiscent of cases in which edited arrest photos were found to be improper summation material because of superimposed descriptive labels and inferences which appealed to passion. In re McKague (182 Wash App 1008 [Wash Ct App Div 1 2014]) involved a prosecutor's slide which featured the

defendant in the center of a circle with the word "GUILTY" overlaid over his face.  Text surrounded the circle, with each phrase pointing towards the defendant.  The phrases included text that summarized the trial testimony such as "intended to commit theft," "during the taking the defendant resorted to force," "took can of oysters," etc.  The court found that the "slide was a calculated device employed by the prosecutor to manipulate the jury's reasoned deliberation and impair its fact finding function.  It substantially undermined [the defendant's] right to a fair trial" (id.).  Similarly, the court sitting en banc in In re Glasmann (175 Wash 2d 696, 286 P3d 673 [2012]) ordered a new trial because the prosecutor committed pronounced and persistent misconduct when he overlaid the phrase "guilty" across defendant's arrest photo on three separate occasions, as well as phrases like "do you believe him?" and "why should you believe anything he says about assault?" (see also State v Walker, 182 Wash 2d 463, 341 P3d 976 [2015]).  In State v Walter (479 SW3d 118, 127 [Mo 2016]), the en banc court found overlaying the word "guilty" over defendant's booking photo amounted to prejudicial error requiring a new trial (see also Watters v State, 313 P3d 243, 129 Nev Adv Op 94 [2013] [booking photo overlaid with the word "guilty" used during a PowerPoint in People's opening statement so prejudicial as to require a new trial]).

The circle around defendant's head, surrounded by numerous text-filled boxes with arrows pointing towards him, with

one text box asserting that defendant "[l]ay in wait for [the victim] with .45 cal handgun," is equivalent to defendant's image superimposed with the word "guilty" over it. Just as in In re Glasmann, this imagery, along with a statement not in evidence that implies defendant's actions were predatory, manifests an appeal to the passions and prejudice of the jury (175 Wash 2d at 681). The slide is a clear visual communication to the jury that the defendant is a frightening man whom the state has dedicated significant resources to target.

The edited exhibit does not even comply with the majority's rule because the slide is not merely a display of a verbal argument or the equivalent to pointing at something. The prosecutor could not physically draw a circle with arrows pointing at defendant and, significantly, could not simultaneously have asserted all the statements contained in the text boxes. That imagery is only possible through the editing of the exhibit. Moreover, contrary to the majority's claims, the text in the final slide does not "accurately track[] the witnesses's testimony and the fair inferences to be drawn from the evidence" (maj op at 6). The notion that defendant "lay in wait for" the victim outside is belied by the trial testimony that he told his ex-girlfriend that he was on his way into the building. When she tried to dissuade him, he told her if she did not come out he would go in. Similarly, there was no testimony at trial to suggest that the victim was shot with an "illegal"

handgun as the gun was never recovered.  Other text boxes present disputed claims as facts, such as the number of shots and the distance between the shooter and the victim.  The text boxes blended the facts, inferences, and speculation and did not present a "clear delineation between argument and evidence" (id. at 3).  Nor does this final slide avoid "an appeal to the jury's emotions" (id. at 6).  The intent of the edited exhibit was laid bare when, during the display of the slide, the prosecutor dramatically declared that defendant's image: "was the face of death on March 14, 2010."[3]

In addition, the prosecutor's use of slides depicting edited images of the victim's hospital records was improper because the slides were misleading.  The added text and numbers appeared to scientifically confirm the victim was shot four times, twice in the front and then twice in the back, when the hospital records did not establish the number and order of shots. This is a further example of why an inference -- here that the victim was shot four times, twice in the back -- can be confused as an undisputed fact and should not be superimposed on a reproduction of an exhibit.

These slides were additionally prejudicial to defendant because medical documents, like the hospital records here, have an air of objectivity that can carry significant weight with the

---

[3] Defense counsel's objection to this statement was overruled.

jury (see Vella v Commr. of Soc. Sec., 394 Fed Appx 755, 757 [2d Cir 2010] [medical records considered "objective evidence"]). The prosecutor used the slides to convey that the victim was shot four times, and stated that the exhibits were physical evidence corroborating the victim's testimony to that effect. Thus, the exhibit was used as objective evidence to bolster the victim's testimony and undermine the defense's argument that the victim was not telling the truth.

IV.

The prosecutor exceeded the scope of proper summation by including in his PowerPoint presentation edited slides featuring defendant's arrest photo and hospital records that misrepresented the evidence, misled the jury, and appealed to emotion. Defense counsel should have objected during summation (People v Wright, 25 NY3d 769, 780 [2015]). His failure to do so deprived defendant of meaningful representation, and left defendant vulnerable to the force of these slides on the jury's deliberations. There was no strategic reason for counsel's silence (id.), as he was aware before summations that the PowerPoint presentation would be -- as counsel described it -- "a force to be reckoned with." Given the impact of summation, counsel's failure to object constituted ineffective assistance of counsel (id.; People v Fisher, 18 NY3d 964, 967 [2012]). For the reasons I have discussed, the display of these slides, and defense counsel's failure to object, denied defendant a fair

trial and was highly prejudicial (<u>People v Baldi</u>, 54 NY2d 137, 147 [1981]; <u>Strickland v Washington</u>, 466 US 668, 686 [1984]).

I dissent.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order affirmed. Opinion by Judge Abdus-Salaam. Chief Judge DiFiore and Judges Stein, Garcia and Wilson concur. Judge Rivera dissents in an opinion in which Judge Fahey concurs.

Decided April 4, 2017